# SUPREME COURT,

## STATE OF KANSAS.

## JULY TERM, 1877.

PRESENT:

Hon. ALBERT H. HORTON, Chief Justice.
Hon. DANIEL M. VALENTINE, } Associate Justices.
Hon. DAVID J. BREWER,

J. H. TENNENT, et al., v. RICHMOND T. BATTEY, et al.

ASSIGNMENTS; DEBTOR AND CREDITOR; *When Attaching-Creditor Cannot Attack Debtor's Assignment, as Fraudulent.* L. made a general assignment for the benefit of his creditors. T. commenced an action against L., and caused an attachment to be issued and levied upon the property of L. covered by the assignment. Immediately thereafter, and before judgment in the attachment-suit, he commenced an action against L. and his assignee to have the assignment declared void; *Held,* That such action could not be maintained; that an attaching-creditor had not, before judgment in the attachment-suit, such a *certain* claim upon the property of the defendant as would entitle him to maintain an action to set aside an alleged fraudulent conveyance of the defendant.

*Error from Marion District Court.*

ACTION by *Tennent, Walker & Co.*, against *Battey*, and one *Lucas* and wife, to set aside an alleged fraudulent conveyance of property made by *Lucas* and wife to *Battey*. The material facts are stated in the opinion, *infra*. The district court, at the April Term 1875, held that this action could not be maintained, and gave judgment in favor of the defendants for costs. The plaintiffs bring the case here for review.

*Frank Doster*, for plaintiffs:

The petition is not a "creditor's bill." A creditor's bill is filed to reach the equitable assets of a debtor, upon which the creditor has no lien, and which are not the subject of levy and sale on execution; and we concede that to maintain such an action, a judgment, and return of "no goods," are necessary. *Newman v. Willetts*, 52 Ill. 198. But a bill to set aside a fraudulent conveyance, can be maintained where there is property subject to execution, and the creditor has acquired a specific lien upon it, whether by attachment, warrant of distress, judgment or execution: Drake on Attachment, § 225; 4 Minn. 13, 17; 11 N. H. 311, 327; 6 Foster (N. H.) 506, 516; 40 N. H. 516, 518; 1 Stockton (N. J.) 36; 33 Texas, 297, 315; 27 N. Y. 596, 601; 28 N. Y. 45; 9 Abb. Prac. Rep. 1st series, 325; 34 N. Y. 256; 47 Ala. 685; 30 Ala. 319; 6 Cal. 376; 13 Cal. 76; 62 Ill. 218; 19 Abb. Prac. Rep. 469. And see *Reese River Mining Company v. Atwell*, L. R., 7 Eq., 347—a late English case, in which a bill to set aside a fraudulent conveyance was sustained, though no judgment or lien had been obtained. These authorities are all in point, and show that an attachment-lien is sufficient to enable the creditor to maintain the action, and it is believed that in those states where a precedent judgment has been required, their legislatures had not provided for the obtainment of an attachment-lien by mesne process, or if such provision was made, the creditor has failed to avail himself of it. *Stone v. Anderson*, 6 Foster (N. H.) 518. Possibly an exception or two has occurred since that decision. The theory upon which these cases proceed is, that property fraudulently conveyed, as to creditors, is still the property of the debtor, and that when a creditor, in the effort to provide a fund for the satisfaction of his anticipated judgment, has obtained a specific lien upon it, with the right in certain cases to sell before judgment, he has acquired such a standing in court as will enable him to maintain an action to avoid the fraudulent incumbrance, the same as though he had prose-

cuted his legal remedies to the ultimate. It is no answer to say that if the conveyance is *void* the creditor can treat it as such, and sell under his attachment. True, he can; but who would be the purchaser, with the evidence of an adverse title standing upon the records, or known to exist? It requires a judicial determination of the fact, and to clear away the fraudulent obstruction, so as to permit a sale at a fair price. In some of the New York cases the question arose in actions of trespass against the sheriff; but it is submitted, that in that form it is substantially the same, because there can be no difference between the assignee suing in trespass or replevin, because the creditor has not reduced his demand to judgment, and defending on the same grounds against a suit of the creditor. Drake on Att., § 225.

*L. F. Keller*, and *A. E. Case*, for defendants, as to alleged frauds and fraudulent assignments, and plaintiff's supposed rights, cited, 13 Ohio, 30; 8 Kas. 270. As to creditor's bill, and when maintainable, and generally upon the right of plaintiffs to maintain the action, 50 N. Y. 80; 17 Wis. 470; 3 Gilm. 522; Walker's Ch. (Mich.) 28; 1 Manning, 321; 4 Minn. 14; 12 Minn. 145; 17 Ala. 685; 11 Ark. 411; 4 Fla. 344; 4 Ga. 322; 47 Ga. 530; 13 Ill. 324; 31 Ill. 322; 39 Ind. 225; 17 Iowa, 495; 3 Littell, 10; 5 J. J. Marsh. 87; 3 Rob. 457; 25 Me. 313; 28 Me. 232; 6 Gill & Johns. 424; 10 Md. 500; 14 Smedes & Marsh. 11; 27 Miss. 509; 23 Mo. 56; 44 Mo. 520; 2 Johns. Ch. 144; 20 Johns. Ch. 296; 13 N. Y. 488.

The opinion of the court was delivered by

BREWER, J.: Plaintiffs commenced an action against defendant Lucas, on notes and an account, and caused an attachment to be issued and levied on property alleged to be his. Before prosecuting such action to judgment they commenced this action to set aside, as fraudulent and void as against creditors, an assignment made by defendant Lucas and wife, to their co-defendant Battey, of all their property,

including the property taken on the attachment. A demurrer to the petition filed in this action was sustained, and the case is here for review.

The principal question is, whether the plaintiffs, by the mere suing out of an attachment, and causing it to be levied upon the property conveyed by the assignment, and before the fact that they *are* creditors has been established by a judgment, have acquired the right to litigate the validity of the assignment. Upon this question elaborate briefs have been filed by counsel on both sides, and authorities cited and commented on from nearly every state in the union. The case has been before us for some time, and we have examined carefully the principal authorities cited by either counsel. On the mere matter of authorities, a decision well fortified could be rendered either way. In Drake on Attachments, § 225, we find this summary of the question:

"In connection with the lien acquired by an attaching-creditor, has come up in different forms the question of his right to secure the benefit of his lien, as against fraudulent conveyances of and incumbrances upon the attached property. The first shape this question assumed, was as to the right of the attaching-creditor to maintain a creditor's bill in equity to set aside such a conveyance or incumbrance. The doctrine that a creditor at large, before he obtains judgment, is not entitled to such a remedy, is familiar to the legal mind. 'The reason of the rule,' said Chancellor Kent, 'seems to be, that until the creditor has established his title he has no right to interfere, and it would lead to an unnecessary and perhaps fruitless and oppressive interruption to the exercise of the debtor's rights. Unless he has a *certain* claim upon the property of the debtor, he has no concern with his frauds.' Such doubtless is the general rule. * * * In different states the attempt has been made to establish another exception in favor of attaching-creditors. In New York, a bill in favor of such a creditor was once sustained by the court of chancery; but this was contrary to the uniform course of decision in that state, before and since. In Illinois, and Missouri, the right to maintain such a bill was denied. On the other hand, New Hampshire and New Jersey have held that an attachment confers a lien, in virtue of which the bill may be maintained. In New York, too, it was decided that an attaching-creditor

is not, before he obtains judgment, entitled to impeach the *bona fides* of a judgment confessed by a debtor to a third person before the attachment was levied."

A question, upon which courts have ruled so differently, cannot be perfectly plain and easy of settlement. Many considerations of weight can be urged on either side, and it is not easy for either to answer fully the arguments of the other. For a full review of the authorities and arguments, we refer to the briefs of counsel, and shall content ourselves with a statement of that which has influenced our decision. While an attachment is doubtless a specific lien, it is a lien of very uncertain tenure. It is subject to defeat by the dissolution of the attachment, on motion, or a judgment in favor of the defendants on the merits of the claim. The grounds for attachment given by our statute, are many. Some of them imply no wrong on the part of the defendant. Suits in attachment are common. Motions to dissolve come, in almost every case; and the experience of every practitioner will testify that a large per cent. of the attachments issued and levied finally fail. Attachment-liens do not, with us, as in some states, require a judicial order for their creation. The mere affidavit of the creditor is sufficient, and that affidavit too, alleging only in general terms the existence of one of the statutory grounds for attachment. Hence, while it is a specific lien, it is a lien for a very uncertain claim.

Again, it would seem that no advantage would inure to the creditor, except in the mere matter of time, by sustaining such an action before the attachment and the claim are established by final judgment. So far as the creditor's security is concerned, the seizure by the officer preserves the lien as against all changes and transfers, and everything that the debtor or his assignee could do subsequent thereto. Except as to perishable property, and property whose keeping is expensive, no sale can be ordered until after the judgment; and for such property it would be of no advantage to sustain an action like this. Perishable property and property whose

keeping is expensive, demands an immediate sale; and no action can be immediately forced to trial and judgment.

Still again, it would seem that often the time and attention of the court would be occupied with useless litigation. At any time before judgment the defendant may move to vacate and dissolve the attachment, inquiring, if need be, into the truth of the grounds alleged therefor. The judgment on the trial may be for the defendant, and that will end the attachment-lien. And whenever the attachment ceases, the suit brought to set aside any alleged fraudulent conveyance or incumbrance of the defendant fails also, and the whole time and labor of the court given thereto will be wasted time and labor. Why should a court be subjected to this?

Is not the language above quoted from Chancellor Kent, most apt? Ought not a party to have a *certain* claim upon the property of the defendant before he attempts to inquire into the *bona fides* of the defendant's transactions, and invokes the processes of the law, and appropriates the time and labor of courts in the prosecution of such inquiry? and can a party who has simply *asserted* a claim, (and that is all an attachment amounts to, the mere *assertion* by the plaintiff of a claim,) be said in any just sense to have a *certain* claim upon the defendant's property? We of course concede the right of the officer to defend the possession of the attached property, and in such a proceeding doubtless the *bona fides* of the defendant's acts may oftentimes be inquired into; but it does not seem to follow that, because the officer may defend his possession, the plaintiff may prosecute an independent action, not to preserve the possession, but to clear up the title. Until his claim has become certain, he has no right to inquire into the title. Possession must be preserved, to preserve the attachment-lien. But nothing more is necessary until the claim has been made certain. As counsel for defendant well say, (we quote from their brief,) "the plaintiff's lien can be of no avail to them unless they obtain judgment. Their right to enforce the lien is derived from the judgment, and yet the judgment might not be available if the lien of the attachment

22—18 KAS.

Tennent v. Battey.

was lost before the recovery. Therefore in order to preserve their lien as a security for the satisfaction of any judgment they may recover, they have the right to defend that lien against third parties claiming the goods, and in that defense they have the right to show any fact that will defeat the claimant's title. If this were not so they might, though their claim against the debtor be never so meritorious, be compelled to relinquish their security to one claiming under a title fraudulent as to them. But there can be no reason nor necessity for them, in order to maintain their lien, to institute independent actions against third parties who may have some kind of a claim on the property, yet who cannot (and are not attempting to) dispossess the plaintiff. The only right the plaintiffs have under the attachment is, to use such measures as may be necessary to preserve this security until they can reduce their claim to judgment. They have no right to harass other parties with litigation that may prove fruitless, in trying to remove obstructions to the sale of the property, until they have first obtained the right to have a sale of the property made. When that right has been definitely settled, their lien having been preserved intact, they can then commence actions to remove obstructions in the way of their execution. But until this is done, they have no right to interfere with the claims of third parties. There can be no reason nor necessity for such a proceeding."

The judgment will be affirmed.

VALENTINE, J., concurring.

HORTON, C. J., not sitting in the case.