E. S. ELLIS *et al.* v. THE L. HAYS SADDLERY AND LEATHER COMPANY.

**No. 12,701.**   (69 Pac. 165.)

SYLLABUS BY THE COURT.

INSOLVENT DEBTOR—*National Bankruptcy Act—Chattel Mortgage—Injunction.* The national bankruptcy act of 1898 went into effect on July 1 of that year, but its operation was suspended so that involuntary proceedings against a debtor could not be commenced until November 1. In August, 1898, a failing merchant gave a chattel mortgage on his stock of goods to secure a debt owing to the mortgagee, and the latter took possession. A general unsecured creditor (the plaintiff) then brought suit to enjoin a removal of the goods or their sale, alleging that the mortgage was executed in fraud of the bankrupt law, and praying that the property be held in *statu quo* until November 1, when pro-

Ellis v. Hays.

ceedings in bankruptcy, which plaintiff alleged it intended to file against its debtor, could be made available.   *Held*, that no cause of action for equitable relief was stated in the petition, and that a decree granting an injunction must be reversed.

Error from Ford district court; WM. EASTON HUTCHISON, judge.   Opinion filed June 7, 1902.   Reversed.

*F. J. Oyler*, and *Ellis, Cook & Ellis*, for plaintiffs in error.

*Kos Harris*, and *B. F. Milton*, for defendant in error.

The opinion of the court was delivered by

SMITH, J. : On August 6, 1898, William Robison was engaged in a mercantile business in Ford county. On that date he executed to the Kingman-Moore Implement Company his note for $4318.90, the payment of which was guaranteed by E. S. Ellis, one of the plaintiffs in error.

To secure Mr. Ellis from loss and liability by reason of such guaranty, Robison, on the same day, executed to him a chattel mortgage on his stock of goods, worth about $4000, and included in the mortgage was an assignment of book accounts of the value of about $3000.   While in possession of the property as mortgagee this action was commenced, on August 9, 1898, by the defendant in error, which was a general creditor of Robison, on behalf of itself and other unsecured creditors.   The petition recited that the plaintiff below sold goods to Robison prior to July 1, 1898, and that the chattel mortgage held by Ellis was given in fraud of an act of Congress relating to bankruptcy, which was passed in 1898, but that the right to have the debtor adjudged to be a bankrupt involuntarily did not, by the terms of the act, accrue to creditors until November 1, 1898, at which time the plaintiff below

intended to file a petition in the federal court to have Robison declared a bankrupt; that an illegal preference was secured by the mortgagee, which was fraudulent in law. The petition prayed for an injunction to restrain plaintiffs in error from removing the mortgaged property, selling it, or from collecting the accounts, and for the appointment of a receiver to take charge of the property and to hold it until November 3, 1898, to give time to plaintiff to. file an involuntary petition in bankruptcy against Robison. A general demurrer to the petition was filed by plaintiffs in error. It was overruled, and, electing to stand thereon, a decree was entered against them. From the ruling of the court they have come here by proceedings in error.

The time within which controversies like the present one might arise being necessarily limited to a period between July 1 and November 1, 1898, the adjudicated cases on the question involved are few. With possibly one exception, however, they sustain the position of the plaintiffs in error.

In *Ideal Clothing Co. v. Hazle*, 126 Mich. 262, 85 N. W. 735, it was said:

"It is apparent that the object of this bill was merely to preserve an estate until a time should come when it could be administered under the new law, which, at the time the bill was filed, did not authorize the federal courts to interfere. It is claimed that, as these courts were powerless to protect creditors under the bankruptcy act, the state courts must have the power. This does not impress us as being a sound theory. The rights and remedies in such cases under the state law were settled. They existed and were open at this time. But counsel say that they might be superseded or supplemented for the four months following July 1 by another remedy, so that they might, if they chose, avail themselves of a protective remedy

afforded by the bankrupt act. We see no better reason why this should be than that an injunction should heretofore have been issued in any case of fraud and danger to impound the estate until creditors' claims should mature, judgment be obtained, execution issued and returned, to the end that a creditor's bill might be effectively filed. The exigency is as great in such a case as this, yet no one has heard of such a proceeding being permitted.''

The defendant in error was not deprived of its right to attach the property of Robison, its debtor, by the terms of the bankrupt law. Such attachment, of course, might have been set aside had the debtor been adjudged a bankrupt after November 1, and the attaching party compelled to prorate with other creditors if such lien ''would militate against the best interests of the estate''; yet, this was a contingency so remote and uncertain that the likelihood of its happening would not justify a court of equity in basing a prohibitive decree on such a possibility.

Again, it is alleged in the petition ''that on November 1, 1898, it (plaintiff below) intends to file a petition in the United States court and have Robison declared a bankrupt involuntarily.'' This allegation introduced a further element of uncertainty into the case, for that, under section 59*b* of the bankruptcy act, the joint action of three creditors is necessary to the institution of involuntary proceedings against a debtor. When the time was ripe for taking such action two or more other creditors might not join the saddlery company, thus making it impossible to perform the promises made by plaintiff below to the trial court.

The precise question at bar was before the supreme court of New York at special term, and again in the appellate division. (*Victor v. Lewis*, 38 Hun, 318, 53

N. Y. Supp. 944, 57 N. Y. Supp. 16.) At both times it was held that the action could not be maintained. The last expression was given by Mr. Justice O'Brien, who said :

"It is sought in this action to issue an injunction for the purpose of suspending the rights of the defendants under their judgments for an indefinite time, so that the other creditors, if they deem it proper, may take proceedings in the United States courts. And this relief is asked for in an action in which it is perfectly evident that no such final relief can be given. . . .

"The right to final relief is not here claimed to be absolute, but only contingent upon the happening of a future event, and the determination of proceedings which may be thereafter brought in the bankruptcy court. It has been many times decided that a temporary injunction will not be granted in such an action where the plaintiff is not entitled to final relief." (See, also, *In re Ward*, 104 Fed. Rep. 985.)

The plaintiff below, being a mere general creditor, could have no standing in court under the practice of this state to set aside a fraudulent conveyance by its debtor until judgment was had on its demand and execution returned unsatisfied. Nor could it enjoin the disposition by the debtor of his goods, pending an action to obtain judgment. (*Tennent v. Battey*, 18 Kan. 324; *Bodwell v. Crawford*, 26 id. 292, 40 Am. Rep. 306.)

The judgment of the court below will be reversed, with directions to sustain the demurrer to the petition.

GREENE, POLLOCK, JJ., concurring.