No. 21,816.

THE FARMERS & MERCHANTS STATE BANK, *Appellant*, v. L. A. LEMLEY, THE CHETOPA STATE BANK et al., *Appellees.*

### SYLLABUS BY THE COURT.

1. CREDITOR'S BILL—*Not Maintainable until Creditor Has Reduced His Claim to Judgment—Application of Rule.* The rule that a creditor's bill cannot be maintained until the creditor has reduced his claim to judgment (*Tennent v. Battey*, 18 Kan. 324), is applied in an action to foreclose a mortgage, where plaintiff, after garnisheeing moneys deposited in a bank, amends his petition, makes the bank and the depositors parties, asks that payment be enjoined, that the debtor be decreed the owner of the money, and that it be applied upon the debt.

2. SAME—*Petition Fails to State Cause of Action.* The allegations in the petition that the debtor is insolvent, that the mortgaged property is insufficient to satisfy the debt, and that the debtor admits the indebtedness, are not sufficient to take the case out of the rule stated in the foregoing paragraph.

Appeal from Labette district court; ELMER C. CLARK, judge. Opinion filed April 12, 1919. Affirmed.

*Archie D. Neale,* of Chetopa, for the appellant.

*E. L. Burton,* and *George F. Burton,* both of Parsons, for the appellees.

The opinion of the court was delivered by

PORTER, J.: At the commencement of an action for the foreclosure of a mortgage, the plaintiff filed an affidavit in garnishment alleging that the Chetopa State Bank was indebted to the defendants, and a garnishment summons was duly issued and served. The answer of the garnishee denied that it had in its possession or under its control property of the defendants, or property in which either of them had any interest. The plaintiff gave notice that it elected to take issue with the garnishee's answer, and the court heard evidence upon that issue; but while the matter of the exceptions to the answer was pending, plaintiff obtained leave to amend the petition and to make additional parties. The defendants to the original action were L. A. Lemley and J. A. Lemley, who executed the note and mortgage. The amended petition, after repeating the statements in the

first petition with reference to the note and mortgage, alleged that L. A. Lemley and J. A. Lemley admitted the amount of the indebtedness on the note, and alleged that they were both insolvent, and that the real estate secured by the mortgage would not sell for more than $200. The amount of the note was $1,000, and interest. It was further alleged that J. A. Lemley and Earl Lemley had been engaged in the auto livery business under the name of Lemley & Son, and that the Chetopa State Bank held a deposit in the firm name at the time the garnishment summons was issued, amounting to $1,-292.86, which was the money of the defendant, J. A. Lemley. The garnishment proceedings were pleaded, and it was alleged that after the filing of the first answer the Chetopa State Bank filed another, in which it was shown that the bank had money on deposit in the name of Lemley & Son. The petition alleged that Lemley & Son owed no debts and had recently sold their business; that the deposit in the bank is the money and property of J. A. Lemley, and not that of the firm; that if the garnishee should be discharged, plaintiff would lose the greater portion of its claim; that plaintiff had no remedy at law by which to hold the money in the bank and subject it to the payment of its claim; and that unless restrained by the order of the court, defendants and the garnishee would dispose of the money, and it would be lost to plaintiff. The amended petition asked for judgment against the makers of the note and for the foreclosure of the mortgage, and also for an order that until the final disposition of the cause the garnishee be enjoined from paying out any part of the deposit to the credit of the firm of Lemley & Son. The court was asked to require the garnishee and the defendant, Earl Lemley, to show what interest, if any, they had in the money, and that the court decree the money to be that of J. A. Lemley, and it be ordered paid into court, subject to the court's further orders.

A demurrer to the amended petition was sustained, and from this ruling the plaintiff appeals.

Among the specifications of error is one that the court erred in overruling plaintiff's exceptions to the garnishee's answer, but this goes out of the case because the plaintiff now admits that the exceptions were not overruled or disposed of until the final judgment, and the evidence upon which the ruling was

Bank v. Lemley.

made has not been brought up. There remains simply the question whether the court rightly sustained the demurrer. The judgment must be sustained for the reason that the amended petition amounts to nothing more than a creditor's bill, which cannot be maintained until the creditor has reduced his claim to judgment. The garnishee proceedings are in the nature of an equitable attachment, and under the authority of *Tennent v. Battey,* 18 Kan. 324; *Young v. Buck,* 97 Kan. 195, 154 Pac. 1010; *Knox v. Farguson,* 97 Kan. 487, 155 Pac. 929, and other authorities cited in those opinions, an attachment creditor cannot maintain a creditor's bill.

In *Tennent v. Battey,* supra, Justice Brewer said:

"A question, upon which courts have ruled so differently, cannot be perfectly plain and easy of settlement. Many considerations of weight can be urged on either side, and it is not easy for either to answer fully the arguments of the other. . . . While an attachment is doubtless a specific lien, it is a lien of very uncertain tenure." (p. 328.)

The opinion quotes the following reason for the rule as stated by Chancellor Kent:

" 'Until the creditor has established his title he has no right to interfere, and it would lead to an unnecessary and perhaps fruitless and oppressive interruption to the exercise of the debtor's rights. Unless he has a *certain* claim upon the property of the debtor, he has no concern with his frauds.' " (p. 327.)

The opinion then proceeds—

"Is not the language above quoted from Chancellor Kent, most apt? Ought not a party to have a *certain* claim upon the property of the defendant before he attempts to inquire into the *bona fides* of the defendant's transactions, and invokes the processes of the law, and appropriates the time and labor of courts in the prosecution of such inquiry? and can a party who has simply *asserted* a claim (and that is all an attachment amounts to, the mere *assertion* by the plaintiff of a claim), be said in any just sense to have a *certain* claim upon the defendant's property?" (p. 329.)

The doctrine of *Tennent v. Battey,* supra, has been often referred to with approval by this and other courts, and, without attempting to determine where the weight of authority lies on the much vexed question, we adhere to former decisions and hold that an attachment creditor is not entitled to maintain a creditor's bill until his claim has been placed in judgment.

The plaintiff insists that because the amended petition alleges that the debtors admit the plaintiff's claim, and also alleges that they are insolvent, the rule to which we have referred does not obtain; the theory being that the law will not require the doing of a useless thing, and that since a judgment against the defendants could not be collected, the law will not require plaintiff to exhaust a useless remedy and obtain judgment before being permitted to maintain an equitable garnishment. It is true that many courts have made a distinction as to the necessity of first securing a judgment, and have held that equitable relief may be afforded to a general creditor, where it would be impossible for him to obtain a judgment, or where to secure one would be useless because the debtor is insolvent.

Authorities on both sides of this proposition are cited in a note to 23 L. R. A., n. s., 88. In *Ladd v. Judson,* 174 Ill. 344, it was held that the only exception to the general rule is when the demand is of such an equitable character that judgment at law cannot be obtained thereon; and that to reach equitable assets, a judgment establishing complainant's demand is an indispensable prerequisite to the maintenance of a creditor's suit, although the fund to be reached is accessible only by the aid of a court of chancery. In a quite exhaustive note to the same case, reported in 66 Am. St. Rep. 267, there are citations to additional authorities on both sides of the question whether or not the exhaustion of legal remedies may be excused by insolvency. The author of the note states that the cases are in almost hopeless conflict on the question, and in the same note it is said that "as to whether an attachment lien will furnish a basis for a creditor's bill without the recovery of a judgment, the authorities are also in conflict," and that "on the mere matter of authorities a decision well fortified could be rendered either way," citing *Tennent v. Battey,* 18 Kan. 324. The principal ground upon which the doctrine of *Tennent v. Battey* rests, is, that the best evidence of the judgment debtor's insolvency is that afforded by the issuance and return of an execution unsatisfied. The court has consistently adhered to the doctrine of that case, and sees no reason for departing from it now.

Plaintiff seeks to rely upon certain expressions in the opinion in the recent case of *Bank v. Scheutz,* 103 Kan. 229, 173 Pac. 278, where the assets of a firm were reached by garnish-

ment by the creditor of an individual partner, and the action of the court in taking an account of the partnership affairs, in order to determine what portion of the fund belonged to the defendant partner, was approved. In that case the plaintiff brought suit against an individual, and garnishee summons was served on a bank, which answered that it had certain money on deposit to the credit of the defendant. Intervening petitions were filed by other parties, including one by the defendant's father, who alleged that he was a partner of the defendant in a farming enterprise and that an accounting of the partnership would show that the most of the money belonged to him. The action was not a creditor's bill to begin with, and none of the parties claimed that it could not be maintained on that ground, nor that the proceeding by which the interest of the various claimants in the fund was determined developed into the nature of a creditor's bill. The garnishee's answer showed that it had money on deposit to the credit of the original defendant. In order to try out the issues raised by the intervening petitions, it became necessary for the court to take an account of the partnership affairs. Incidentally, the plaintiff, before reducing his claim to judgment, obtained all the benefits he could have secured by a creditor's bill, but the issues were only those raised by the garnishment and intervening petitions. The question presented in the present case was not involved, and nothing said in the opinion is inconsistent with the decision of the trial court in this case.

The judgment is affirmed.

---

### OPINION DENYING A REHEARING.

(Filed June 7, 1919.)

A motion for rehearing complains of the failure to decide whether the trial court erred in overruling plaintiff's exceptions to the garnishee's answer, and the failure to determine the question of the bank's liability as garnishee. It is charged in the motion that the court in the opinion made a misstatement of fact as follows:

"Among the specifications of error is one that the court erred in overruling plaintiff's exceptions to the garnishee's answer, but this goes out of the case because the plaintiff now admits that the exceptions were not

overruled or disposed of until the final judgment, and the evidence upon which the ruling was made has not been brought up." (*Ante*, p. 16.)

In reference to this statement, it is said in the motion:

"It is not a true statement, and therefore I ask this court to correct it, and to pass upon this question. . . . The final judgment in this case was rendered on the 13th day of February, 1918; the court overruled the exceptions to the answer of the garnishee on the 17th day of October, 1917, as will be shown by the attached certificate of the clerk of the district court of Labette county, Kansas. The abstract of appellant stated that the exceptions were overruled, and also stated what the evidence was on the hearing of such exceptions."

If the opinion contains any misstatement of fact, counsel for appellant is alone responsible. It was stated in the abstract and repeated at the oral argument that, after hearing the evidence, the trial court overruled the exceptions and rendered a judgment against plaintiff for costs and attorney's fees in favor of the bank as garnishee; "that thereupon" plaintiff filed its amended petition making Earl Lemley and the bank additional parties defendant, and asking that the bank be enjoined and restrained from paying any of the money to the partnership until the further order of the court. There was a statement in the abstract of what the evidence taken on the hearing of the exceptions showed, but the appellees challenged the abstract with a motion to strike it from the files because no transcript of the evidence taken at the hearing had been made. This motion would have been sustained except for the fact that four or five days after the oral argument counsel for plaintiff sent a letter to the clerk calling our attention to the fact that the statement in his abstract to the effect that the court, after hearing the evidence, overruled the exceptions to the garnishee's answer and rendered a judgment against plaintiff in favor of the garnishee, was an error, "as shown by the records in the office of the clerk of the district court," and stating:

"I enclose you certificate from the clerk showing that no judgment was rendered against plaintiff in that proceeding. . . . No judgment was ever rendered in this cause except the one on the note sued on by plaintiff. . . . The court at no time discharged the garnishee or rendered any judgment in favor of the garnishee, and I wished the court to know that there was an error in my abstract, which was prepared without looking at the record in the case."

Bank v. Lemley.

The certificate of the clerk of the district court, which accompanied the letter to the clerk of this court, recites that on July 24, 1917, when the case was commenced, the garnishee summons issued and was served; that on August 20, 1917, plaintiff filed an amended petition making the bank and Earl Lemley additional parties defendant; and that on October 18, 1917, each of them filed a demurrer to the amended petition, which demurrers were sustained. The certificate contains the following statement of the clerk:

"My records do not show the rendition in this case of any judgment except the one rendered on the 13th day of February, 1918, as above stated."

We naturally assumed that plaintiff, not having procured a transcript of the evidence, realized that his abstract, so far as it related to the evidence, could not stand, and that he did not intend to rely on his assignment of error in respect to the rulings on the exceptions to the garnishee's answer, and desired to rest his case solely on the proposition that the court erred in sustaining the demurrers to the amended petition. For this reason, after we had decided that the amended petition, being in the nature of a creditor's bill, could not be maintained, we supposed the decision of that question disposed of the case. If counsel's statement was true in his letter to the clerk to the effect that "no judgment was ever rendered in this cause except the one on the note . . . The court at no time discharged the garnishee or rendered any judgment in favor of the garnishee," then it would seem that the plaintiff had nothing to appeal from with respect to the exceptions to the answer of the garnishee. This would be true even if the evidence on the hearing of the exceptions had been preserved.

We are now presented with a later certificate by the same clerk, in which she certifies that her records show that the exceptions to the answer of the garnishee were passed upon and overruled October 18, 1917, which was several months before the final judgment.

It is apparent that counsel attempted to make up a record from his memory, without having preserved the evidence on the hearing of the exceptions, and, as he admits, without consulting the records. As we now understand his contention, it

is that the garnishee's answer was not sufficient, although the abstract states that it denied the bank had in its possession or under its control any property of the defendants or either of them; denied it was indebted to the defendants or either of them; and denied that it had any money or property in which the defendants or either of them had any interest. The abstract states that this affidavit was in the form prescribed by section 7125 of the General Statutes of 1915.

The further contention that it was the duty of this court to determine the question of the bank's liability as garnishee is apparently predicated upon the theory that there is an abstract which sets out the evidence. Since no transcript was procured, that part of the abstract cannot be considered. Aside from the evidence, however, it is sufficiently shown, and seems not to be disputed, that, while the action was to foreclose a mortgage against J. A. Lemley, the fund attempted to be held by the garnishment proceedings was a deposit in the bank to the credit of the firm of Lemley & Son, a partnership composed of J. A. and Earl Lemley, and that, reduced to its last analysis, the plaintiff's contention is that the court should have held the fund liable for debts of one of the partners. But the money of a partnership cannot be garnisheed in a suit against one of the partners, for the sufficient reason that the money is not due to the defendant in the action, but to the firm. (*Trickett v. Moore,* 34 Kan. 755, 10 Pac. 147.)

It is said in the motion:

"It would be a very great injustice to appellant to have the record in this case show the state of facts set out in the opinion, when such statements are not true. . . . The question of the liability of the garnishee in this case is one of the questions in this case."

Without conceding that it is, or can become, one of the questions, it is quite apparent that it is not a very serious one.

Rehearing denied.