No. 39,088

THE PLAINS STATE BANK, a Corporation, *Appellant,* v. V. M. ELLIS, et al., *Appellees.*

(263 P. 2d 254)

Opinion filed November 7, 1953.

*James A. Williams,* of Dodge City, argued the cause, and *C. W. Hughes,* and *Byron G. Larson,* of Dodge City, were with him on the brief for the appellants.

*Chas. Vance,* of Liberal, argued the cause, and *H. Hobble, Jr.,* and *Chester A. Nordling,* of Liberal, were with him on the brief for the appellees.

The opinion of the court was delivered by

THIELE, J.: The plaintiff bank appeals from a judgment denying its claim to certain moneys as hereafter set out. Consideration of the contentions urged by it requires a summary review of an extended course of pleadings, rulings and other matters.

On February 1, 1951, Plains State Bank, later referred to as the Bank, commenced an action against V. M. Ellis, Lee Roy Kerr and Estelle Kerr, later referred to by their surnames, to recover on two notes, signed only by the Kerrs, but claimed by the bank to be a partnership obligation of Ellis and the Kerrs, a copy of the contract between Ellis and the Kerrs for farming operations being attached. This case was docketed as No. 6202. Ellis filed an answer denying liability on the notes and that a partnership existed, and alleged that Kerr was his tenant; that Kerr had disposed of a part of the 1948 wheat crop to Collingwood and a part to Plains Equity Exchange and Co-operative Union, hereafter called Equity, and had failed to account; that the Bank claimed a chattel mortgage lien on Kerr's share of the wheat; that his mother Minnie Ellis and he had a first and prior landlord's lien on the crop; and that it was necessary Minnie Ellis, Collingwood and Equity be made parties, and that all parties be required to set up their claims, and on motion, the court so ordered. Thereafter summons was issued to Seward county for Collingwood and to Meade county for Minnie Ellis and Equity and they were personally served. On August 13, 1951, Ellis filed an amended answer and cross petition setting up facts showing that he and his mother were landlords and that Kerr was the tenant, and after referring to his written agreement with Kerr and Kerr's chattel mortgage to the Bank, alleged that Kerr delivered wheat worth over $7,200 to Collingwood who drew some checks on plaintiff Bank which were endorsed by Kerr without authority of Ellis and Ellis never received any part of the proceeds, and omitting some other allegations, alleged that all of the wheat so sold was rent wheat belonging to Ellis under his lease contract with Kerr. He also pleaded a similar second cause of action concerning sale of wheat by Kerr to Equity of the value of over $5,300;

that Kerr had wrongfully cashed the checks at plaintiff Bank, and that the wheat so sold was rent wheat. A third cause of action re-alleged many of facts stated in the first and second causes of action, expanded thereon, alleged that Kerr had removed from the state and was insolvent, that Ellis had a lien subject only to his mother's landlord's lien, and superior to the Bank's lien under its mortgage from Kerr, and that a determination of the Ellis liens was necessary to determine the ownership of wheat delivered to Equity for which it withheld payment by reason of the Bank's demand. On October 4, 1951, the Bank demurred to the Ellis cross petition on the ground of misjoinder, and on February 28, 1952, the court sustained the demurrer and gave Ellis permission to file separate petitions. On March 10, 1952, Ellis filed a pleading entitled "Separate Cross Petition Against Plaintiff and All Defendants," in which he alleged much of the matter contained in his previous cross petitions. On March 14, 1952, the Bank filed its motion that the last mentioned pleading be stricken from the files because it was filed without permission or authority from the court, statute or other law and did not constitute separate petitions as contemplated by G. S. 1949, 60-709 or by the order of the court, and that the filing of the plead-ing was an attempt to combine in the action all of his alleged causes of action against Collingwood and Equity notwithstanding a demurrer had been sustained to his original cross petition on the ground of misjoinder. The motion was denied. The record does not clearly disclose, but in some manner three new docket numbers were assigned, 6327 to Kerr's claim against Equity, 6328 to Kerr's claim against Collingwood, and 6329 to the controversy between the Bank and Ellis. In the last docketed case and on May 3, 1952, the Bank filed an amended answer to Ellis's Separate Cross Petition which need not be reviewed, further than to state it included a demurrer alleging misjoinder.

Under some circumstances or arrangement not disclosed by the record, the original case under its original docket number was tried to determine liability on the notes which Kerr gave the Bank. The trial resulted in a judgment rendered July 25, 1952, in favor of Kerr and against the Bank, which appealed to this court where the judg-ment was affirmed June 6, 1953. See *Plains State Bank v. Ellis*, 174 Kan. 653, 258 P. 2d 313.

Before the above appeal was determined and on October 7, 1952, the following three cases came on for trial. In case No. 6329 it

was stipulated that the evidence taken in numbers 6327 and 6328 and the admissions and stipulations made should be received in evidence insofar as relevant. Certain admissions were made and evidence was received. On November 29, 1952, the trial court rendered judgment in each of the three cases, but in view of the fact the Bank is the only appellant and its rights were determined only in case 6329, we shall confine ourselves to that judgment. The journal entry of judgment filed contains some general findings of fact, followed by findings in each case 6327, 6328, and 6329 separately with conclusions of law in each case. It is not necessary that the findings and conclusions be reviewed in detail. They include the following. Under a written agreement, Ellis leased to Kerr 1,440 acres of land. Ellis was to furnish the land and farming machinery and Kerr was to furnish fuel and labor, the crops to be divided 60 percent to Ellis and 40 percent to Kerr. It was stipulated that Minnie Ellis had an interest in the land, and that under the above agreement she would get one-sixth, V. M. Ellis would get one-half, and Kerr would get one-third of the crop. Kerr and his wife were indebted to the Bank in the sum of $7,250 on notes on which there were no credits. The crop for 1948 was valued at $22,901.85 and all had been accounted for except that Equity had on hand $4,037.99 worth of wheat to be distributed in the action. A finding made covers the amount of wheat sold to Collingwood and Equity and disposition of proceeds. The court further found that testimony had been presented by the Bank that it had a chattel mortgage on 5,000 bushels of wheat owned by Kerr on the Ellis land, given to secure the above mentioned notes; that there was no allegation in the pleadings of the mortgage except Ellis's statement that the Bank claimed a mortgage and the Bank admitted such allegation. (We may here say the abstract does not include any chattel mortgage, the list of exhibits received, shown in the abstract, does not include it, and we are left in the dark as to what its terms were or that it was ever filed for record.) As a matter of law the trial court concluded that of the balance of $4,037.99 held by Equity, and represented by a check "cancelled by these proceedings," Minnie Ellis was entitled to $1,229.43 which would pay her in full for her share of the 1948 crop leaving a balance of $2,808.56; that Ellis's share of the crop was $11,450.93 of which he had received $8,461.25 leaving due Ellis as his landlord's share the sum of $2,989.68; that the balance was insufficient to satisfy Ellis's landlord's share and the balance held by Equity belongs to Ellis. Judg-

ment was rendered accordingly, the judgment to be paid out of the $4,037.99 held by Equity.

In due time the Bank filed a motion for a new trial, and that motion being denied, on January 27, 1953, it served a notice of appeal only upon Ellis and his attorneys of record.

On June 24, 1953, Ellis filed his motion that the appeal be dismissed. Two grounds are set forth: (1) That the only money judgment rendered was in favor of Ellis against Equity, and it is a necessary party to the appeal; and (2) that the issues raised are moot for the reason the judgment against Equity was for $2,808.56 in favor of Ellis and $1,229.43 in favor of Minnie Ellis; that the execution on the judgment was not stayed and Ellis caused execution to issue, Equity paid the judgments into court and the proceeds have been paid to Ellis, leaving nothing to be divided. The Bank filed a brief in opposition. The motion was denied on July 7, 1953, with leave to renew on the hearing of the appeal. In the meantime the Bank filed its motion for permission to amend its notice of appeal to include Minnie Ellis, Collingwood and Equity and on July 7, 1953, this motion was allowed. Thereafter an amended notice of appeal was served upon all parties. On September 3, 1953, Equity filed its motion that the appeal be dismissed for the reason its substantial rights had been affected and it had suffered a material change in its position after the time for appeal had expired and before it was made a party to the appeal and, after referring to the judgment, the motion for new trial and the ruling thereon, stated that the Bank served its notice of appeal on January 27, 1953, upon Ellis only and no steps were taken by the Bank to stay execution, and no supersedeas bond was ever filed; that on June 16, 1953, Ellis caused an execution to issue and the Sheriff came to Equity for levy and to avoid the levy on June 18, 1953, it paid the clerk of the court the sum of $4,037.99 and on June 20, 1953, the clerk paid such sum to Ellis and Minnie Ellis; that it no longer had funds with which to pay the Bank's claim and that no notice of appeal was served on it until subsequent to July 7, 1953. The Bank filed a brief in opposition to this motion which admitted the issuance of execution and that Equity paid the money into court, but argued invalidity of what was done. No ruling has been made on Equity's motion. The appellant Bank filed its brief in which the motions to dismiss are not mentioned. In his brief Ellis has renewed his motion to dismiss and the Bank has filed no answer thereto. But we

shall not dwell at any length upon either motion, for although we are inclined to conclude each should be sustained, the record is not too clear that all questions are moot and that we should so rule. The motions are overruled and we take up the Bank's contentions that the trial court erred in particulars hereafter mentioned.

In its brief the Bank denominates the course of pleadings as a "general mess" and without attempting to assess any blame therefor or to set forth any reasons for our conclusions, we agree.

Out of the welter of pleadings and trial, the Bank has specified error which it presents under six headings. The first four contend the trial court erred: (1) In making Minnie Ellis, Collingwood and Equity parties defendant in the original action; (2) in granting permission to Ellis to file separate petitions without further service; (3) in overruling the Bank's motion to strike from the files the separate cross petition against the Bank and all defendants filed by Ellis on March 10, 1952; and (4) in overruling the Bank's demurrer to the above separate cross petition for misjoinder. We see no purpose to be served in discussing the contentions separately. If there was any error in any one of the above, it became immaterial in view of the following. After separate docket numbers had been assigned the controversies between the causes involving the Bank and Ellis, Ellis and Collingwood, and Ellis and Equity, the three cases, if they may be called that, all came on for trial on the same day, and every party including the Bank and every defendant except Minnie Ellis, and she is not complaining, appeared and participated in each trial, according to journal entries of judgment included in the abstract, the evidence in two cases wherein Ellis asserted claims against Collingwood and Equity was stipulated into the case of Bank v. Ellis, docket No. 6329, the court heard everything the various parties offered, there is no claim incompetent evidence was received, nor that competent evidence was rejected, and the claimed errors, even if they were errors, became immaterial. In view of the whole record it cannot be said the Bank was prejudiced by the above four rulings of which it complains.

The Bank's fifth contention is that the judgment is contrary to the evidence. In part our attention is directed to certain facts which the Bank concedes are not to be found in the abstract of the record. There is no complaint that the findings made are not supported by the evidence except in the following particular. The Bank relied upon the contract between Ellis and Kerr, a copy of which was at-

tached to its original petition, as showing a partnership agreement, while Ellis relied on it as showing only a leasing agreement. As previously indicated, the trial court in effect found that the relation created was landlord and tenant, and conversely, not of partnership. The Bank invokes the rule that construction of a written contract was for the trial court in the first instance, but that on appeal this court may decide the question itself, citing *In Re Estate of Kemper,* 157 Kan. 727, 145 P. 2d 103. Following that rule, we have examined the contract. We find it unnecessary to set the contract out in full. As far as the wheat farming operations in question in this action are concerned, the contract stated, in substance, that Ellis was farming approximately 1,440 acres of land in Seward County and had the necessary farm machinery to cultivate it and that Ellis would furnish the land owned and leased by him, and the machinery and repairs to it, and that Kerr would furnish all work in connection with cultivation and harvesting of the crop and all oil, gas and grease necessary and would keep the buildings, fence and farm equipment in good repair, and that after the landlord's share on the rented ground had been paid, the balance of the crops should be paid 60 percent to Ellis and 40 percent to Kerr, who agreed to deliver Ellis's share to market at his own expense. As drawn, the contract referred only to crops planted in 1947, but provided for an extension by mutual agreement.

For reasons hereafter stated we shall not treat the contention exhaustively. Rather than make a review of our many decisions treating whether or not a contract resulted in a partnership, we note that the subject was given extensive treatment in *Potts v. Lux,* 161 Kan. 217, 166 P. 2d 694. That case arose where a petition, alleging an oral contract of partnership, was attacked by demurrer. In determining the tests of partnership, it was said that every test did not have to be met in every case, and inferentially at least, that though one test was met, a partnership did not result, but that the test was, whether when all the circumstances were considered, the relationship had been established. The tests were specified as follows:

"Numbered among the often approved tests to which we have referred are the following: Intention of parties to the contract; sharing in profits and losses; charging of losses against accumulated profits; community of control over management and direction of the business; active participation in management of the affairs of the enterprise; joint control and exercise of ownership over all or part of the business assets; participation in division of

the net earnings; sharing in payment of expenses of operation; fixing of salaries by joint agreement; investment in the business of undistributed profits for the purpose of building up a substantial cash reserve; division of undistributed profits in the event of liquidation contingent upon repayment to one of the parties of cash originally invested in capital." (l. c. 222.)

A reading of the contract in question discloses no statement of intention to become partners, nothing whatever as to sharing profits and losses, no community of control over management and direction of the operation, nor of any of the other tests unless it be a division of the profits (crops). In our opinion, the contract was one creating a relation of landlord and tenant and not a partnership. See *Koch v. Murphy,* 151 Kan. 988, 101 P. 2d 878.

Actually it makes little difference in the final result if the contract between Ellis and Kerr be treated as creating a partnership. Although there is some evidence the Bank was a creditor of Kerr, there is no evidence whatever that it knew anything about the contract relations between Ellis and Kerr at the time it made its loans to Kerr, the note on its face did not pretend to be a partnership obligation, and there is no proof that the loan was anything but a personal loan to Kerr. The pleadings may be said to show inferentially that Kerr gave the Bank a mortgage, but it was never produced in evidence. The most that is claimed for it is that Kerr mortgaged 5,000 bushels of wheat. It isn't claimed that Kerr bound or intended to bind the alleged partnership by the mortgage, nor is there any claim that the balance in the hands of Equity represented wheat other than that produced by the alleged partnership. If the partnership theory be followed, the wheat was subject to the landlord's lien of Minnie Ellis, and as to her the Bank makes no adverse claim. So far as the remainder is concerned the Bank seeks to appropriate so-called partnership assets to the satisfaction of its debt due from one of the partners. Even though the chattel mortgage had been given, no lien prior to the partnership interest of Ellis could have been adjudged under the showing made. But whether there was a lien or not, as applied here, the rule is that a creditor of an individual partner may not look to partnership assets in satisfaction of his demand until the partnership estate is settled. See *Glass Co. v. Ludlum,* 8 Kan. 40, syl. 5; *Fullam & Co. v. Abrahams,* 29 Kan. 725; 47 C. J. 919; 68 C. J. S. 646; and 40 Am. Jur. 243, § 160. And as bearing on the question see *Trickett v. Moore,* 34 Kan. 755, 10 Pac. 147; *Bank v. Schuetz,* 103 Kan. 229, 173

Pac. 278; and *Bank v. Lemley*, 105 Kan. 15, 180 Pac. 238. Under the findings of the trial court there was no overplus of the assets of the so-called partnership due to Kerr after the debts of the so-called partnership and the shares of the other partners had been accounted and therefore nothing remained which the Bank could appropriate to the satisfaction of Kerr's debt to it.

Another argument is made that Ellis elected a remedy when he sought recovery from Collingwood and Equity on certain checks representing wheat sales and that he may not now recover on the theory that he had a landlord's lien. The argument is belated. No pleading raised any such question, and the record does not disclose it was raised at the trial. It may be suggested that the Bank made an election when it sought to recover from Kerr and Ellis on the notes made by Ellis (see *Bank v. Ellis*, supra) the same amount it now seeks to appropriate from Equity. We shall not invoke the doctrine in favor of or against either party.

The Bank's final contention is that the trial court erred in denying its motion for a new trial. Under this heading no extended argument is made. The contention is limited to a general statement that the "trial court committed many errors in the preliminaries leading up to the trial in this case, in the trial itself, and in the judgment which it rendered." What has been said earlier herein demonstrates there was no error in any matter to which our attention has been directed. It does not appear the trial court's ruling on the motion for a new trial was erroneous.

The judgment of the trial court is affirmed.

SMITH, J., concurs in the result.