388 So.2d 1298 (1980)
WOLF RIDGE PLASTICS, INC., a Corporation, and E.T.A. Incorporated, a Corporation, Appellants,
v.
JACKSONVILLE ELECTRIC AUTHORITY, a Body Politic and Corporate, and Roger J. Au & Son, Inc., a Corporation, Appellees.
No. OO-25.
District Court of Appeal of Florida, First District.
October 7, 1980.
*1299 A. August Quesada, Jr., and Frederick R. Brock of Wildt, Quesada, Brock & Skinner, Jacksonville, for appellants.
Charles T. Boyd, Jr. of Boyd, Jenerette, Leemis & Staas and Dawson A. McQuaig and William Lee Allen, Jacksonville, for appellees.
LARRY G. SMITH, Judge.
Wolf Ridge Plastics, Inc. (Wolf Ridge) and ETA Incorporated (ETA) seek reversal of a summary final judgment denying all relief in their suit for injunction against *1300 appellees, Jacksonville Electric Authority (JEA) and Roger J. Au & Son, Inc. (Au). Appellants argue that there were genuine issues of material fact precluding denial of an injunction, and that the trial court erred, after finding all issues in the injunction suit to be moot, in denying appellants' motion to file an amended complaint for damages. We conclude from examination of the record and the authorities presented that no reversible error has been made to appear, and we therefore affirm.
Appellee Au was awarded the contract for construction of a thermal discharge unit for JEA at JEA's Northside Generating Station. See Wood-Hopkins Contracting Co. v. Roger J. Au & Son, Inc., 354 So.2d 446 (Fla. 1st DCA 1978). In connection with the bidding for the job, Au was required to and did specify appellant-Wolf Ridge as the supplier for a large diameter (16 foot) pipe to be used for the discharge of heated water. Appellant-ETA is a commissioned sales agent for Wolf Ridge. Prior to actual award of the contract by JEA to Au, Wolf Ridge sold all of its assets, business and goodwill to Armco Steel Corporation. Shortly after JEA entered into its contract with Au, Au requested and JEA authorized the use of pipe manufactured by another pipe supplier, CAE Fiberglass Products, Ltd.
Wolf Ridge and ETA filed suit for injunction, seeking to prohibit JEA and Au from using any large diameter pipe not manufactured by Wolf Ridge. The trial court entered summary final judgment in favor of JEA and Au, based upon findings of fact, not controverted, that the 16 foot diameter pipeline in question, manufactured by CAE Fiberglass Products, Ltd., had at the time of the hearing already been fully fabricated, delivered, laid in a trench under the St. Johns River for a distance of 3,000 feet in accordance with the plans and specifications of the contract, all segments had been locked together, anchored with two heavy concrete pillars on each 50 foot segment of pipe, and back fill had been placed over the entire pipe. The court further determined that neither of the appellants had any contract with either JEA or Au at any time. Thus, concluding that at the time of the hearing it was impossible to prevent or enjoin what had already occurred, the trial judge ruled that the complaint for injunction was moot. Upon announcement of the trial court's ruling, appellants requested leave to amend the complaint to reflect an action for damages, which motion was denied.
Appellants contend that Wolf Ridge, as the prequalified pipe supplier utilized by Au in submitting its successful bid, has a vested right to manufacture and supply the large diameter pipe used on the job; and, relying upon Robert G. Lassiter and Co. v. Taylor, 99 Fla. 819, 128 So. 14 (1930), they contend that at the time of entry of the summary judgment relief by injunction to prohibit completion of the contract between JEA and Au was not precluded, because the sum of $946,504.00 of the contract price remained in the possession of JEA, undistributed to Au; and that the job had neither been finally approved nor accepted. They further contend that there was a genuine issue of material fact whether there was an oral contract between Wolf Ridge and Au, obligating Au to designate Wolf Ridge as its pipe supplier if Au was the successful bidder, and that Dedmond v. Escambia County, 244 So.2d 758 (Fla. 1st DCA 1971), is authority for appellants' asserted right to file an amended complaint seeking money damages.
Appellants cite no authority for the proposition that a supplier such as Wolf Ridge, designated by a contractor in its bidding documents, has a vested right to manufacture and supply materials utilized in the construction. We find no basis for appellants' contention on this point. They were only indirectly involved in the bidding process, never became parties to the contract between JEA and Au, and, notwithstanding their reliance upon the language of this court's opinion in Wood-Hopkins, supra, neither Wolf Ridge nor ETA were parties to that litigation, and can claim no benefit from it.
*1301 The Lassiter case was an action to restrain payment of the balance due on a public contract because of faulty construction. However, Lassiter was a taxpayers action, and neither appellants are residents or taxpayers of the State of Florida; nor do we find any authority in Lassiter which would authorize the court to order either the nonpayment or the refund of funds paid for benefits already completed and delivered under the public contract. See Robinson's Inc. v. Short, 146 So.2d 108 (Fla. 1st DCA 1962). In this connection appellees point out that the total contract price was $11,650,000.00. We note from attachments to the complaint that Au, in its bid on the contract, allocated $4,850,000.00 out of the total contract price to the large diameter pipe needed on the project. The record does not disclose what portion, if any, of the $946,504.00 retainage applied to the pipe item, but it is clear that all pipe had been manufactured and delivered by the pipe supplier when the summary judgment was entered.[1] Au further represents to the court in its brief and oral argument, without contradiction, that the project has been completed, and all funds have been disbursed.
The great weight of authority supports the action of the trial judge in denying the injunction on the grounds of mootness, since injunction ordinarily will not be ordered where it is impossible to prevent or enjoin that which has already occurred. 42 Am.Jur.2d, Injunctions, § 291, page 1089; Sunshine Villa Apartments Inc. v. Snyder, 335 So.2d 841 (Fla. 4th DCA 1976). See also City of Coral Springs v. Florida National Properties Inc., 340 So.2d 1271 (Fla. 4th DCA 1976), and Dick v. Drainage District No. 2, etc., 175 Kan. 267, 267 P.2d 494 (1954).
Dedmond v. Escambia County, supra, is distinguishable because Dedmond was a bidder, and as such was in position to insist upon compliance with the statute, Section 125.35, Florida Statutes, requiring that the award be made to the highest and best bidder. This court found that Dedmond was in the position of a successful bidder; however, in view of the fact that the county had already rebid the lease of a beach concession, albeit erroneously, Dedmond was not confined to the remedy of injunction, but was authorized to pursue the less disruptive remedy of an action for damages for breach of contract. Here, appellant Wolf Ridge is not in the position of a bidder, but only in the position of one who had agreed to become a supplier to a bidder.
Wolf Ridge had no contract with JEA. Furthermore, we find no merit in appellants' contention that JEA was bound by the "law of the case," found in our Wood-Hopkins decision. The principle of "law of the case" may be defined as follows: Whatever is once established, on appeal, between the same parties in the same case continues to be the law of the case, whether correct on general principles or not, so long as the facts on which such decision was predicated continue to be the facts in the case. 3 Fla.Jur.2d, Appellate Review, § 414. Since appellants were not parties to the Wood-Hopkins litigation, which was an entirely different law suit, no "law of the case" established there can be applicable to appellants.
We find no merit in appellants' contention that JEA "was without power to reserve in the plans and specifications prepared in advance of bidding, the power to make exceptions, releases and modifications after the contract is let." The contract itself, as advertised, makes specific provisions for changes and modifications in the work. Appellants' reliance upon cases providing protection to bidders where changes disadvantageous to them are made, is misplaced. *1302 So also is appellants' reliance upon cases providing protection to the public against changes which would result either in the public getting less than was bargained for, or which would so change the project as to amount to a new project without competitive bidding.[2] The principles governing those cases are not applicable to this controversy. Appellants are not bidders in the context of the cases they rely upon. Furthermore, it cannot seriously be maintained that JEA received less than it bargained for when it accepted specially fabricated pipe meeting contract specifications, solely by reason of the fact that the pipe was manufactured by a different supplier. The change in the pipe supplier did not create a "new project" without competitive bidding. We conclude that whether JEA's action in approving a pipe supplier other than Wolf Ridge was "arbitrary and capricious" is of no consequence in this proceeding.
Appellants insist that because of the circumstances under which the JEA contract was awarded to Au, as disclosed in our Wood-Hopkins opinion, Wolf Ridge had contract rights which were violated by the change in pipe suppliers. It is clear from the deposition of Wolf Ridge's president that Wolf Ridge had no written contract with Au. However, the president, Mr. Kauffman, testified that he thought there were some "verbal understandings." Language in our Wood-Hopkins opinion supports the contention that Wolf Ridge had made commitments to supply the pipe (opinion page 449):
... It is uncontradicted that the supplier in this case is bound, as indeed the supplier itself so states, to furnish pipe meeting the specifications at the cost originally submitted, regardless of additional costs to the supplier of changes required.
In the instant case, no question is raised by Appellants as to the responsibility, integrity and capability of either Au or its designated pipe supplier, Wolf Ridge. Both were pre-qualified by JEA as "responsible." Further, counsel stipulated at the hearing to Au's experience and qualifications.
Assuming, as we did under the state of the record existing in Wood-Hopkins, the existence of an obligation by Wolf Ridge to supply the pipe in event Au became the successful bidder we cannot agree, as appellants apparently assume, that this created a corresponding obligation on the part of Au to order the pipe from Wolf Ridge.[3] Moreover, even if representations by Au led Wolf Ridge to believe (as the complaint in effect alleges) that Wolf Ridge would be the pipe supplier if Au was successful in its litigation with JEA and Wood-Hopkins, this would not be sufficient to hold Au irrevocably bound to Wolf Ridge regardless of changed circumstances. That there were changed circumstances is apparent. One was Wolf Ridge's sale to Armco Steel Corporation, and another was JEA's modification of the contract conditions by approving a different pipe supplier.
*1303 Wolf Ridge's sale of its entire assets and business to Armco materially altered the relationship between the parties as it existed at the time of our Wood-Hopkins opinion. The significance of the sale to Armco is indicated by the unrebutted testimony of Wolf Ridge's president. He stated that at the time Wolf Ridge filed its complaint for injunction in this case Wolf Ridge had "possibly one paid employee," and that if Wolf Ridge had received the order to furnish the pipe on the JEA job it would have been accomplished by buying new equipment, hiring local people, and building the pipe in the Jacksonville area. The parties disagree as to the significance of the sale. For one thing, as Wolf Ridge points out, it contemplated building the pipe locally, because of transportation difficulties with that size pipe, whether or not there had been a sale of the company. However, we are convinced that after the sale to Armco, Wolf Ridge possessed no unique capabilities as a pipe supplier to supply pipe never before made by any manufacturer, that would in any way inhibit JEA in modifying its agreement with Au by approving a different pipe supplier. The contract as advertised and bid provided for changes in the work, and JEA's decision to do so in this instance, based upon its own judgment and discretion, is not subject to modification by the courts. Moreover, it is obvious from conversation and correspondence between counsel for Wolf Ridge and Au that after the sale to Armco such a change was within the contemplation of the parties.[4]
Finally, after the suit in this case was filed a full year elapsed before the matter was presented to the court for adjudication, at which time the entire project in controversy was complete except for a few final details, and final acceptance. We find the trial judge did not abuse his discretion in denying the eleventh-hour request for amendment to the complaint, which at that point would have changed the issues and materially varied the grounds for relief. United States v. State, 179 So.2d 890 (Fla. 3rd DCA 1965); Cox v. Seaboard Coastline Railroad Company, 360 So.2d 8 (Fla. 2nd DCA 1978).
McCORD and SHIVERS, JJ., concur.
NOTES
[1] We know of no theory under which Wolf Ridge could claim any part of the undisbursed funds held by JEA. Any monetary claim by Wolf Ridge against JEA or Au would have necessarily been in the nature of an action for damages for breach of contract, recoverable only after trial and judgment. We do not entertain seriously any suggestion that the trial court abused its discretion in refusing to impound these undisbursed funds and impose an injunction upon final approval of the construction project pending adjudication of Wolf Ridge's damage claims.
[2] The complaint contains no allegation of injury to the public except for vague reference to the change of pipe suppliers as constituting "a subversion of the competitive bidding requirements" established by law, and the need to "protect the public policy inherent in the statutory bidding requirements." There is no allegation in the complaint nor elsewhere in these proceedings that the specifications for the pipe have been changed. No contention has been made at any time that the pipe manufactured and delivered for the project does not meet all specifications of the contract. Furthermore, we find no allegation of damage except that in the event of the manufacturing and supplying of the pipe by any company other than Wolf Ridge, "both Wolf Ridge and ETA will suffer irreparable harm and damage and the Jacksonville Electric Authority and Au will be unjustly enriched."
[3] Although not argued by the parties, we note that under the Uniform Commercial Code, Section 672.205, Florida Statutes, a firm offer for the sale of goods which by its terms gives assurance that it is held open is not revocable, for lack of a consideration. A contract between the parties does not result until the offer is accepted. See also U.S. Fidelity & Guaranty Company v. North American Steel Corporation, 335 So.2d 18 (Fla. 2nd DCA 1976), holding that fabricated pipe could properly be characterized as "goods" within the meaning of the Uniform Commercial Code, Section 672.105.
[4] Letter from Au's attorney to Wolf Ridge's attorney, dated December 7, 1977:

"This letter will confirm our telephone conversation in which you requested information as to whether Roger J. Au & Son, Inc. would be willing to endeavor to effectuate an assignment of the contract with Wolf Ridge to Armco Steel Company, or otherwise.
"At the present time, in view of the status of the pleadings, we would prefer not to undertake any inquiry as to any assignment of your contract for reasons that are self-evident. Following determination of the appeal, either favorable or unfavorable, as the case may be, we would be more than happy to undertake to effectuate an assignment of the contract subject to the approval of Jacksonville Electric Authority and its consulting engineers in the event that we are successful in the appeal and are awarded the contract. I trust the foregoing will confirm to you that we would be willing to undertake to try to accomplish this within the guide lines set forth in the original bid invitation material and specifications attached thereto."
Letter from Wolf Ridge's attorney to Au's attorney dated February 3, 1978:
"... . . You asked me about Wolf Ridge's commitments to Armco concerning the Jacksonville Electric Authority job. Wolf Ridge did enter an agreement with Armco to the effect that should Au be awarded the JEA job, Wolf Ridge would use its best efforts to cause Au and the JEA to approve the assignment of its subcontract from Wolf Ridge to Armco."