## TRAVIS, MURRAY & COMPANY v. THE TOPEKA SUPPLY COMPANY *et al.*

1. ATTACHMENT — *No Lis Pendens, When.* In an ordinary action for the recovery of money only against a debtor, in which an attachment is issued and levied upon an equitable interest of the debtor in real estate, the legal title to which is in a person who is not a party to the action, there is no *lis pendens* against a subsequent purchaser for value and without knowledge, from the holder of the legal title.

2. LEVY, *When Constructive Notice.* An attachment levy on real estate is constructive notice only to such persons as may acquire subsequent interests in the attached realty from parties or privies to the action.

*Error from Shawnee District Court.*

THE opinion, filed at the session of the court in November, 1889, contains a sufficient statement of the nature of the action, and the material facts.

*Rossington, Smith & Dallas*, for plaintiffs in error.

*Overmyer & Safford*, for defendant in error Aaron Rowe; *J. T. Ward*, for defendant in error Fannie O. Miller.

Opinion by SIMPSON, C.: In the year 1883, one George F. Miller was doing business in the city of Topeka, in the shadows of a corporation that was called "The Topeka Supply Company." This corporation was organized in 1880, with no stockholders, but with the usual quantity of titled officials; a few hundred dollars as a basis for business, contributed by Miller, who was sole manager, and the only live person con-

nected with it. In May, 1883, the Supply Company being insolvent, Miller sold the stock on hand, consisting of plumbing goods and fixtures, to one Louis, for a consideration of $1,800, part of which was paid in cash, and the residue in town lots. Two of these lots, being the ones in controversy, were conveyed by Louis, at the direction of Miller, to Fannie O. Miller, his wife. This conveyance was made to Mrs. Miller on the 24th day of May, 1883, but was not recorded until the 14th day of August, 1883. On the 3d day of September, 1883, these plaintiffs in error commenced an action in debt against the Topeka Supply Company, and caused an attachment to be issued and levied on the lots conveyed by Louis to Mrs. Miller. This attachment was not dissolved, and in the following February they obtained a judgment against the Supply Company for $887.50, with an order that the lots seized by the attachment process be sold to satisfy the judgment. After the lots were attached, on the 22d day of October, 1883, Mrs. Miller sold and conveyed them to one Burns, and on the 23d of September, 1884, Burns conveyed them to the defendant in error, Aaron Rowe.

This action was commenced on the 16th day of March, 1886, to subject these lots to the payment of the judgment. Issues were framed and the cause tried by a jury at the March term, 1887, and a verdict was returned against the Supply Company and Fannie O. Miller. The special findings are that the Topeka Supply Company was not indebted to Fannie O. Miller at the time the lots were conveyed to her; that Burns, the grantee of Mrs. Miller, did not have any knowlledge of any fraud on the part of Mrs. Miller or anyone else in receiving the deed of the lots from Louis, nor any actual knowledge of the levy of the attachment upon said lots; that the defendant Rowe, at the time he purchased the lots in controversy, had no knowledge or notice of fraud in making the deed to Mrs. Miller by Louis, nor any knowledge of the levy of the attachment. At the trial the court instructed the jury as follows:

"5. I further instruct you that the pendency of the suit of

plaintiffs against the Topeka Supply Company, and the levy of the attachment in that suit upon the premises in question, is not of itself constructive notice to the purchaser of said premises from Fannie O. Miller subsequent to the levy of said attachment, of the rights and claims of the said plaintiffs; and if defendant Aaron Rowe, at the time he claims to have purchased said premises, had no other notice of the alleged rights or claims of said plaintiffs, he is not presumed to have had any notice by reason of the pendency of said suit, and the issue and levy of said attachment."

These special findings and this instruction present the naked question as to whether the purchaser of the lots from Mrs. Miller was bound by a constructive notice of the attachment, or because of *lis pendens*. Counsel for plaintiffs in error, by a vigorous and extended brief, maintain these propositions, and insist on a reversal for the misdirection to the jury.

I. It is clear to us that when Burns purchased from Mrs. Miller, he was not bound because of *lis pendens*. One very conclusive reason for this is, that Mrs. Miller was not a party to the original action of these plaintiffs in error against the Topeka Supply Company.

"If, although a suit is pending, the person holding the title to the property has not been made a party to the suit, so that there is a *lis pendens* against him, a purchaser from the person so holding the title, without actual notice of the claims of the plaintiff in the action, will not be bound by the determination of the suit."

And again it is said:

"To affect a purchaser who comes in *pendente lite*, under the holder of the legal title, with the constructive notice of the equity claimed against it, such holder of the legal title must have been impleaded at the time of the purchase." (Bennett, Lis Pendens, § 97, and authorities cited.)

It would be a great hardship, and that public policy upon which the rule of *lis pendens* is founded would not justify a requirement that a purchaser make investigation outside of the parties to the record, in pending suits, to ascertain the possible rights of persons to the property, other than the parties to the litigation, or that the purchaser should deal with the

property at the peril of subsequently having the title of such other persons drawn into the pending litigation. These three things must concur to constitute a litigated condition of the property: First, the property must be of a character to be subject to the rule of *lis pendens*. Second, the court must acquire jurisdiction both of the person and the property. Third, the property must be sufficiently described in the pleadings. In the case of these plaintiffs in error against the Topeka Supply Company, the court did not acquire jurisdiction of the person who held the legal title, to wit, Fannie O. Miller. No better illustration of these rules can be found than in the record we are considering. In the first case referred to, in which the attachment was issued and levied, the holder of the legal title from whom the purchase was made was not made a party to the suit. In the case mentioned in 1886, the person in whom the legal title vested at the time of the commencement of the first suit, as well as her grantee, are made parties, and the petition contains a full and complete description of the litigated property, "the *res litigiosa*." In the first case a purchaser from the holder of the legal title is not bound by *lis pendens*. In this case a purchaser from her or her grantee would be bound, because she is a party, because the court has acquired jurisdiction over her person and the property, and because the *res litigiosa* is accurately described in the petition.

It is fairly said by counsel for the plaintiffs in error that, whatever may be the general rule, this instruction is squarely in the face of § 81 of the code of civil procedure, which provides:

"When the petition has been filed, the action is pending, so as to charge third persons with notice of its pendency, and while pending no interest can be acquired by third persons in the subject-matter thereof as against the plaintiff's title," etc.

We had occasion to say in *Smith v. Kimball*, 36 Kas. 474, that this section was to be construed on the theory that it was designed to embody the doctrine of *lis pendens*, which has long formed a part of the equity jurisprudence of this country, and to be viewed in the light of the authorities generally on that

subject; so that the reasons already stated are sufficient to dispose of this contention and resolve it against the plaintiffs in error. But we can very safely go farther than this, and say that in the original action of the plaintiffs in error against the Topeka Supply Company there is no claim of title made by these plaintiffs in error to the town lots in controversy. That action was on an ordinary debt; it asked for a personal judgment for money only, against the Topeka Supply Company. It was an action to recover money only. There was no hint or suggestion in the record that the title or condition of real estate was sought to be litigated; the subject-matter of the action was the enforcement of personal indebtedness. In the very nature of things it could not be the subject of *lis pendens* against a purchaser from the legal owner of property attached to secure the moneyed demand who is not a party to the suit. It is probably the law, that although the contention is merely in regard to a moneyed demand, and auxiliary proceeding *in rem* is resorted to in the same action — as an attachment in aid of the suit at law — there is a lien that is equivalent to a *lis pendens*, and which may ripen into title by virtue of the result of the litigation. Probably the better view to be taken of such auxiliary proceedings is, that the provisional remedy pursued creates the lien by virtue of a statutory provision, and hence the constructive notice of *lis pendens* does not apply. Be this as it may, we are content to say that the construction of § 81 of the code claimed in this case is too broad, is not supported by authority, and we cannot adopt it.

II. There is no doubt under our statutes, but that whatever equitable interest the Topeka Supply Company had in these lots was subject to attachment. To what extent are the purchasers from Mrs. Miller bound to take notice of the attachment proceedings? In this state an equitable interest in land is subject to attachment. (Code, § 222; *Bullene v. Hiatt,* 12 Kas. 98.) The attachment lien binds only the equitable interest held in the land by the debtor at the time of the levy, and cannot be affected by any subsequent act of the debtor.

In this case it must be borne in mind that Mrs. Miller was not a party to the action in which the attachment was issued and levied. It is conceded that the law, as universally held, is, that from the moment an attachment is levied on land to which the legal title or any equitable interest therein vests in a party to the action in which the order of attachment issues, all subsequent purchasers from such party take subject to the attachment lien. The contention in this case is, that a purchaser from a person in whom the legal title vested, but who was not a party to the suit, is bound to take notice of the levy on an equitable interest claimed to be in some other person who is a party to the action. In other words, it is said that the levy of an order of attachment on real estate is constructive notice to the world. The counsel for plaintiffs in error cite the following cases as sustaining their proposition: *Frellson v. Green*, 19 Ark. 376; *Fish v. Fowlie*, 58 Cal. 373; *Blodgett v. Huiscamp Bros.*, 64 Iowa, 548; *Lacy v. Moore*, 6 Coldw. 348; *Lackey v. Seibert*, 23 Mo. 85; *Budd v. Long*, 13 Fla. 288; *Wright v. Smith*, 11 Neb. 341; *Bergman v. Sells*, 39 Ark. 97; *Scarborough v. Malone*, 67 Ala. 570. We have very carefully examined all of these cases, and say with great confidence that every one of them discloses the fact that the subsequent purchaser bought from the original debtor, or his grantees, property that before the purchase had been levied upon by attachment, in an action in which the original debtor was a party. We have found no case that goes to the extent of saying that when A sues B and causes an attachment in that action to be levied upon the property of C, a subsequent purchaser from C without actual knowledge is bound by the attachment lien, or that the attachment levy is constructive notice to purchasers from C.

Counsel seem to claim that the legislature has omitted its duty to make provisions for some kind of notice in cases in which equitable interests are attached. But this is based upon the false assumption that some other or greater necessity for notice is required in the attachment of equitable than of legal interests in real property. Our code permits equitable inter-

ests in real property to be attached in the same manner, by the same procedure, and to like extent, as legal interests; and if the holder of the legal title to real property, or the owner of equitable interests therein, are not made parties to the action in which the legal or equitable interests are levied upon, the rule regarding subsequent purchasers from either is the same. The truth is, that this case is stronger for the purchaser from Mrs. F. O. Miller than anyone that can be found in the books, because the title to the land attached never did vest in the Topeka Supply Company, nor is there any public record that ever connected that company with it in any respect. Conceding that Mrs. Miller's title was fraudulent as against the creditors of the Topeka Supply Company, or of her husband (who was not a party to the original suit), still a purchaser from Mrs. Miller, without knowledge of the fraud, would take the title as an innocent purchaser for value. A fraudulent grantee holding only a voidable title may convey an indefeasible estate to an innocent purchaser. While the record of the attachment was security to these plaintiffs in error against a subsequent conveyance of the equitable interest of the Topeka Supply Company, the record of the prior conveyance to Mrs. Miller, whose title appeared to be good, was security for Burns, the innocent purchaser acquiring title through the deed of Mrs. Miller. (*Tarbell v. West*, 86 N. Y. 280; Tiedeman, Real Property, § 817.) In a recent case in New Hampshire, *Savings Bank v. Mead*, 63 N. H. 435, the facts were that Blaisdell, who was insolvent, conveyed the lots through one Brown to his wife, in August, 1876. On the 13th of January, 1879, Mead, a creditor, attached all the real property of Blaisdell, including these lots. April 26, 1880, Mrs. Blaisdell sold and conveyed the lots to Mrs. Perkins, who purchased for value, and without knowledge of adverse claims. Mead sought to do just what is claimed in this case — to hold by virtue of the priority of his attachment lien, and because the conveyance to Mrs. Blaisdell was fraudulent as to creditors. The court say :

"There was nothing in the record of attachments to indi-

cate that the estate of which Mrs. Blaisdell held the title was attached, and nothing calling on the plaintiffs to make inquiry. The fact that David Blaisdell's interest in real estate was attached would not suggest the inquiry whether his wife's prior title was good, or her right to convey perfect; whether David was owing the debt which Mead's action was brought to recover, at the time when he conveyed to his wife, or whether the purpose of that conveyance was fraudulent. If the plaintiffs were put upon this inquiry, there would be no limit to which it might not be extended, certainly not within the period within which the statute of limitations would not be a bar. How can a record which raises no doubt and suggests no inquiry be considered evidence to put a party upon inquiry, and charge him with constructive notice? Having no knowledge of the fraudulent character of David's conveyance, the grantee of his wife was only bound, as against the attachment, to find out whether upon the records the wife's title appeared to be valid. Mrs. Perkins and her grantees were not bound to look for a general attachment of all David Blaisdell's real estate made after the registry showed this land had ceased to be his."

We see again that this case is much stronger for the purchaser than the one just cited, because neither the Topeka Supply Company nor the husband of Mrs. Miller was shown by the records to have had at any time any connection with these lots, and because neither Mrs. Miller nor her husband were parties to the original action.

In some of the states there are statutes in force that require the officer who makes a levy of an order of attachment on real estate, to file with the clerk of the court a description of the land levied upon, to be recorded in a "lien record," or to deposit a description with the register of deeds, to be by him noted on the record. The sole object of such statutes is to give notice to all purchasers that this particular piece of land had been subjected to a lien; and by the express terms of such statutes, entries on the lien record, or notations on the registry of title, are notice to all. But even this legislation is based upon a theory that but for it, attachment levies would not be constructive notice except to subsequent purchasers from parties to the action.

To this suggestion of counsel, "that attachment takes the property into the custody of the law," we must respectfully dissent, so far as this particular case is concerned. We make no allusion to a class of cases in which personal property is attached and taken into actual custody and possession by the officer. It is not necessary to consider the effect of such custody in this action. In this case real estate was attached; it was unoccupied. In such a case, it was the duty of the officer who made the levy under the attachment, to leave a copy of the order in some conspicuous place on the lots, or on each lot. This was not done, but a copy of the order was left with Mr. George F. Miller, general manager of the Topeka Supply Company.

We will not now discuss the effect of posting a copy of the order in a conspicuous place on the lots, on subsequent purchasers, as that question is not here. In no event now in mind, is an officer levying on real estate, by virtue of an order of attachment, authorized to take possession of the land. It does not seem to us that these lots were in the custody of the law so as to produce all the usual consequences to people who intermeddle with it, that generally attaches to property that may be strictly said to be *in custodia legis.*

In any and every view that we can take of the question, the conviction deepens that the fifth instruction, as given by the trial court, is the law in this state.

We recommend that the judgment be affirmed.

By the Court: It is so ordered.

HORTON, C. J., and VALENTINE, J., concurring.

JOHNSTON, J., having been of counsel, did not sit.