Shanks v. Simon.

R. N. SHANKS *et al.* v. L. SIMON & Co. *et al.*

No. 8977.

1. ATTACHMENT— *equitable interest in land subject to.* An equitable interest in land is subject to attachment.

2. ———— *levy of, on such interest not avoided by subsequent conveyance of legal title to another instead of attachment debtor.* S. made a parol contract with D. for the exchange of a portion of a stock of merchandise for a farm. D. executed a deed for the land, leaving the name of the grantee blank, and placed it in the hands of a third party to be delivered when the goods should be delivered to him at the place of his residence. The goods were shipped by S. from Clarence, Missouri, consigned to Lane, Kansas. Thereafter, and before they arrived, attachments were levied by creditors of S. on the land. Afterward, the goods were received by D. in due time, and the deed was thereupon delivered to S., who inserted his wife's name in it, and delivered it to her. *Held*, that S. had an equitable interest in the land which was subject to attachment at the time it was levied on, and that neither he nor his wife can now dispute such title for the purpose of avoiding the attachments.

3. ———— *evidence examined, held to sustain finding of fraudulent conveyance to defeat.* The testimony considered, and *held* sufficient to uphold a finding of the Court that the name of his wife was inserted in the deed by S. for the purpose of defrauding his creditors, and that she had notice of his fraudulent purpose and was not a *bona fide* purchaser.

4. ———— *holder of lien on land by, proper party to creditors' suit.* In an action brought by judgment creditors to subject land alleged to be the property of the judgment debtor, the title to which rests in the name of his wife, to the payment of their judgments, a creditor who has obtained an attachment lien not yet reduced to judgment is a proper party to the proceeding, and the court may make such order as may be necessary to protect his rights.

*Error from Franklin District Court.*

*Hon. A. W. Benson, Judge.*

AFFIRMED.          OPINION FILED NOVEMBER 7, 1896.

THIS was an action brought by L. Simon & Co. to subject certain lands in Franklin County to the pay-

25—57 KAN.

ment of a judgment rendered in their favor against R. N. Shanks. The action was tried by the court, and the following special findings of fact were made :

"1. On and for several years prior to May 1, 1891, the defendant, R. N. Shanks, was a retail merchant in business at Clarence, Missouri. On or about that date, the plaintiffs, who are wholesale merchants at Chicago, sold and delivered to said R. N. Shanks, a bill of goods amounting to $770.25, which he placed in his store at Clarence, as a part of his stock in trade. Said goods were sold on credit, and were never paid for, and October 28, 1891, the plaintiffs duly recovered a judgment therefor in this court against R. N. Shanks, for $777, and $—— costs, and an order to sell the property attached in said action as hereinafter specified. Said judgment has never been satisfied, nor any part thereof.

"2. On August 29, 1891, the plaintiffs then commenced said action above referred to and caused an order of attachment to issue therein against the property of said R. N. Shanks, and the attachment was on the same day duly levied upon the southeast quarter of section 22, township 18, range 21, in this county, taken as the property of said R. N. Shanks. The said R. N. Shanks, and said Annie E. Shanks, who is his wife, are and at all said times were residents of Clarence, in the State of Missouri.

"3. At various other times about said 1st of May, the defendant, R. N. Shanks, also became indebted to the wholesale dealers, defendants herein, who also brought suits in this court, and caused attachments to be levied on the same property. Said attachments were levied and afterward judgments duly recovered in the court against R. N. Shanks in favor of the parties, for the amounts and at the dates following :

|  | Attachment. | Judgment. | Amount. |
| --- | --- | --- | --- |
| M. D. Wells & Co | Aug. 31, '91 | Nov. 4, '91 | $487 70 |
| Kelley-Goodfellow | Sep. 3, '91 | Nov. 4, '91 | 329 27 |
| H. B. Glover & Co | Oct. 1, '91 | Jan. 26, '92 | 360 20 |
| Henry W. King & Co | Sep. 23, '91 | No judgment. |  |

Said R. N. Shanks also became indebted before and

after said time, to various other wholesale dealers, in divers sums for goods purchased.

"4. On August 24, 1891, and for some time before, S. W. Devore was the owner of said real estate. About that time he entered into a verbal agreement with said R. N. Shanks, to exchange it for $4,500 worth of goods to be invoiced out of said store. Mr. Shanks directed Devore to make out a deed accordingly. Devore made said deed, leaving it blank as to grantee, because he had understood in the negotiation that Shanks would convey the land to one Clark,— and thought it would be convenient to leave the blank so that the name of Clark could be inserted as grantee. This deed was made out in this county, while Shanks was at home in Missouri, and was placed in the hands of one Walter, to whom Devore had arranged to sell the goods, and who was to go to Clarence and assist in invoicing them, and to represent Devore therein. And Devore authorized him, Walter, to insert any name as grantee as Shanks should direct. This authority was verbal only. The deed in this condition was signed, acknowledged and dated August 24, 1891, in this county.

"5. Mr. Walter, accordingly, on August 25, 1891, proceeded to Missouri to receive said goods. On producing said deed, Shanks at first objected to the blank, but being informed that any name would be inserted that he might direct, proceeded to set apart and invoice the goods. Mr. Walter deposited said deed, still blank as to grantee, in a bank at Clarence, with directions that it be delivered to said Clark, (who assisted in said invoice representing said Shanks therein), when said goods should arrive at Lane, Kansas, where they were consigned to said Walter by said Shanks, on notice by letter from Walter that they had so arrived. This agreement was satisfactory to Shanks, and Walter said to both Shanks and Clark together,—'Fill in any name you choose.' Shanks said,—'I will put in my own name.'

"6. The goods arrived at Lane on 1st day of September, and Walter notified the bank accordingly

by letter to deliver the deed to Clark which it did, and Clark delivered it to Shanks on September 4, 1891. On the same day Shanks inserted the name of Annie Shanks as grantee, and handed it to her at her home in Clarence, Mo. Thompson then wrote a letter of transmittal to the Register of Deeds of this county, and handed the deed and letter to R. N. Shanks who inclosed and directed it to the said Register of Deeds for record, who received and recorded it September 9, 1891.

"7. The goods were shipped to Lane on the morning of August 28, 1891. Afterward, on that day, a member of the plaintiff firm called on R. N. Shanks for payment of said account, at Clarence, who told him of said trade and stated the deed was made to himself and had been sent on for record and that he expected to be able to borrow money on the land and pay the plaintiff and other creditors.

"8. About the time these goods were shipped other creditors were pressing for payment, and Mr. Shanks executed several chattel mortgages on the remainder of the stock, invoicing about $2,500 to secure them, leaving the plaintiff and the creditors, who have since taken judgments as stated in the third finding, unsecured. When this exchange was made, Shanks was insolvent. He owned a homestead worth $1,500, but no property subject to execution except a business house and lots in Clarence encumbered to its full value, the remainder of the stock so mortgaged, and his interest in the real estate attached. He has no property now within the reach of creditors except the said attached real estate and owes several thousand dollars.

"9. The deposition of Annie E. Shanks was taken by the plaintiff in the action at Clarence on the 21st of March, 1892, in which she testified that she paid her husband for said land the sum of $3,100, being the amount of certain promissory notes made to her by her husband at various dates from 1882 to 1889, which she surrendered to him September 4, 1891, for said deed. That said notes were given for money she

had loaned him. That said money, to use her words, 'Had been given to her by Mr. Shanks's father and mother, sale of strawberries and various other things.' That she got $81 'from her father's estate for ties.' That the amount received from her mother was $458.27 in this way, viz. : That her mother at her death left to her and her two sisters the home place, and that she, Mrs. Shanks, sold her interest therein to her father, taking his note for $350 therefor, which she gave to her husband, and that there was then due upon it the sum of $458.27, and that she also recovered $48 more from her mother's estate.

"On April 12, 1892, the plaintiff again took Mrs. Shanks's deposition at Clarence at which time she testified that she received no money on the $350 note. She refused to state the amount received for strawberries or upon what land they were grown. Also refused to state whether there were any credits on any of the notes (of which she had given a schedule with date and amount in first deposition), also refused to state whether she received anything from her father's estate, except an interest in his land, and whether his estate was settled. These refusals were made when the questions were asked and seem to be based mainly upon the fact that she had already given testimony touching such matters in the first deposition. On the first deposition, however, it appears that such questions were not asked.

"Mrs. Shanks did not appear at the trial; but her attorney produced in evidence the several notes which she had testified that she had surrendered for the deed on which no credit appears. Both Mr. and Mrs. Shanks are, and were, at all the times referred to, residents of Missouri, in which State all the transactions herein referred to took place between them.

"10. The remnant of Mr. Shanks's stock at Clarence was sold under one of the mortgages given thereon and bought by Annie Shanks for $850, and she has ever since conducted said business in her own name. The $850 was raised by her upon a mortgage upon her one-third interest in a farm of 360 acres left to

her and her two sisters by her father at his death worth $12.50 per acre and encumbered for $2,000.

"11.  Soon after the 4th of September, R. N. Shanks rented the Kansas land for and in the name of Annie Shanks to a tenant who has since remained in possession.    It is a cultivated farm worth from $3,000 to $3,500 and about equal in value to the goods received therefor.

"12.  The insertion of the name of Annie Shanks in said deed and its delivery to her, was done by R. N. Shanks with intent to defraud, hinder and delay his creditors, and Annie Shanks had knowledge of such facts as make her chargeable with notice of such fraudulent intent, and she is not a *bona fide* purchaser of the land."

Judgment was entered on these findings directing a sale of the land, and the application of the proceeds to the payment of the claims of the attaching creditors, who were made parties to the action.    Shanks and wife allege error in the judgment, and ask a reversal thereof.

*W. J. Patterson*, for plaintiffs in error.

*John W. Deford*, for defendants in error L. Simon & Co. and the Kelley-Goodfellow Shoe Company.

*C. A. Smart* and *W. S. Jenks*, for defendants in error Henry W. King & Co.

ALLEN, J.    The first and most important question presented by counsel for plaintiffs in error arises from the fact that the attachments in favor of L. Simon & Co., and M. D. Wells & Co., were levied before the final delivery of the deed to Shanks, which occurred on the 4th of September, 1891.    The attachment of the plaintiff was levied on August 29, 1891, and that of M. D. Wells & Co. two days later.    The goods exchanged for the land by Shanks were shipped

to Lane on the morning of August 28, and arrived there on the 1st of September.

It is urged that an attachment binds only the interest which the debtor owns at the time an attachment is levied; that it does not bind an after-acquired title, and that neither R. N. Shanks nor Annie E. Shanks, whose name was written in the deed as grantee, obtained any title to the land until the delivery of the deed. The general rule of law is that a deed takes effect only from delivery, and that an attachment does not bind a title subsequently acquired. It must be conceded that the legal title to the land did not actually pass to Annie E. Shanks until the delivery of the deed on September 4.

1. Equitable interest subject to attachment.

But to sustain the attachment it is not indispensable that the defendant should have been vested with the legal title at the time of the levy. It is sufficient if he had an eqitable title. §222 Code; *Bullene v. Hiatt*, 12 Kan. 98; *Aldrich v. Boice*, 56 id. 170. The contract between Shanks and Devore for the exchange of the goods for the land was made on the 24th of August, and the deed was then executed, signed, and acknowledged. On the next day it was deposited in the bank at Clarence to be delivered when the goods should arrive at Lane. The goods were shipped on the 28th, and received at Lane on the 1st of September. If we were to treat this merely as a parol contract, although not enforceable if either party should choose to repudiate it it was not absolutely void. *Becker v. Mason*, 30 Kan. 697; *Dupuy v. Delaware Ins. Co.*, 63 Fed. Rep. 680. It was voidable only at the election of one of the parties to it. Neither party elected to avoid it. On the contrary both parties elected to affirm and execute it. It was, in fact, carried out exactly in

accordance with its original terms, with the single exception that the name of Mrs. Shanks was inserted in the deed as grantee. In this case there was the added circumstance that the deed was actually executed by Devore, and deposited in the bank at Clarence, to be delivered when he should receive the goods at Lane. The deed bore date August 24. It was delivered September 4. If it were important to determine the question as to the date when the legal title passed from Devore to Mrs. Shanks, it is possible that the doctrine of relation might properly be invoked in favor of the attaching creditors; but in this case it is unimportant when the legal title vested, if Shanks at the time the first attachment was levied had such an equitable interest in the land as might be seized for his debts.

2. Levy of attachment not avoided, when.

The parol contract had been duly made, and the deed duly executed, and he was entitled to the delivery of it as soon as the goods should be delivered to Devore at Lane. 1 Devlin, Deeds, § 327. The goods were delivered, and the deed was delivered. Under all these circumstances it is clear to us that, when Shanks commenced the actual performance of the contract by shipping the goods, he obtained an equitble interest in the land, which neither he nor his wife may now deny for the purpose of defeating the attaching creditors. There is no force in the objection to the order directing the application of the proceeds of the land to the payment of the judgment in favor of King & Co. The levy of the attachment in their suit was sufficient to give them a standing in the case and to authorize the court to protect their interests.

There is ample evidence to uphold the findings that the name of Annie E. Shanks was inserted in the deed

for the purpose of defrauding the creditors of R. N.

**3. Evidence sustains finding.** Shanks, that she was chargeable with knowledge of the fraudulent purpose of her husband, and that she was not a *bona fide* purchaser of the land.    Her refusal to answer pertinent questions concerning the transactions between herself and husband, on which she based her claim as a purchaser, places her in a very bad light.    The questions were entirely proper, and there was no fair semblance of an excuse for her refusing to answer.    The Court was justified in inferring that, if she had made truthful answers, they would have disclosed the want of foundation for her claim.

We are entirely satisfied of the correctness of the judgment of the trial court, and it is affirmed.

All the Justices concurring.