No. 35,139

ARTHUR CAUSEMAKER, *Appellee,* v. ARTHUR H. DEROO et al., *Defendants* (ARTHUR FRANCIS DEROO, *Appellant*).

(113 P. 2d 85)

Opinion
filed May 10, 1941.

Roscoe E. Peterson, of Larned, for the appellant.

George W. Finney and Maurice A. Wildgen, both of Larned, for the appellee.

The opinion of the court was delivered by

Hoch, J.: This was an action to set aside a conveyance alleged to have been made in fraud of the plaintiff as a creditor of the grantors. A demurrer to the petition by the grantors and the grantee was overruled, and from that order the grantee appeals. The principal question is whether recovery was barred by the statute of limitations or by laches of the plaintiff.

On February 28, 1925, Arthur H. DeRoo and Mina L. DeRoo, his wife, executed their promissory note to Arthur Causemaker, the appellee, for $5,000, due one year from date. All parties were residents of Illinois. Interest was paid annually and regularly from February 28, 1926, to and including February 28, 1936, without renewal of the note. On January 15, 1937, an interest payment of $30 was credited on the note. On the next regular interest-paying date, February 28, 1937, there was default in payment of interest and thereafter no payment on principal or interest was made.

Mina L. DeRoo had been the owner of a section of land in Pawnee county, Kansas. Appellee brought an action on the note in that county February 9, 1939, service of summons was had by publication, the interest of Mina L. DeRoo and her husband, Arthur H. DeRoo, in the land was attached, and on April 10, 1939, a judgment in rem for $5,825 and interest was obtained against the DeRoos and the land ordered sold. Sale was not effected for reasons presently to be stated. It appears that soon after the last regular interest payment, and on March 23, 1936, the DeRoos executed a quitclaim deed to the Pawnee county land to their son Arthur Francis DeRoo, the

stated consideration being "one dollar and other good and valuable considerations." This deed was recorded in Pawnee county on April 10, 1936.

On May 2, 1939, appellee filed the instant action in Pawnee county to set aside the quitclaim deed on the ground that it was given in fraud of his interests as a creditor of the grantors. All three of the DeRoos were made defendants. The petition alleged, in addition to facts hereinbefore narrated, that at the time the plaintiff made the loan to the DeRoos in 1925, "he relied on the ownership and property rights of Mina L. DeRoo in said property"; that the quitclaim deed conveyed only the legal title to the son and the equitable title remained in Mina L. DeRoo; that the son, Arthur Francis DeRoo, had never claimed or exercised ownership or control of the land and there was no intention that he should do so; that he had not collected or received any rentals or other income from the land; that at the time the quitclaim deed was executed on March 23, 1936, the grantors "were in a precarious financial condition, and were practically, if not totally insolvent"; that by reason of the said conveyance they "did not retain sufficient property to pay their obligations and indebtedness, and particularly the indebtedness they each owed the plaintiff"; that the conveyance was made "without consideration, with the intent to hinder, delay and defraud the creditors of the defendant grantor, and in particular, the plaintiff"; that the plaintiff did not learn about this quitclaim deed until in March, 1938; that from time to time after default in payment of interest, demands for payment of the note were made and assurances given that payment would be made, and that these promises were the principal cause of the delay in bringing action to collect the debt; that the grantors possessed no other property out of which plaintiff's demand could be satisfied in this state or in Illinois; that the grantee, by reason of his relationship as son of the grantors, knew that his parents "were failing or had failed financially" and that he knowingly participated in the scheme to defraud their creditors and particularly the plaintiff; that aside from the land attached in the first action, the plaintiff had no "adequate remedy at law to enforce the collection and payment of his claim against said defendants"; and that as long as the legal title to the land stood in the name of the son, no sale of the land could be effected under the judgment theretofore rendered. The prayer was that the deed be declared void and the land ordered sold under the previous order of sale, free from any claim of the son as grantee.

On such facts, was the plaintiff entitled to have the deed set aside? Appellant contends that since the action to reduce the debt to judgment was not begun until more than two years after the deed was recorded, a cause of action to set aside the deed on account of fraud was barred by G. S. 1935, 60-306, which provides:

"Civil actions, other than for the recovery of real property, can only be brought within the following periods, after the cause of action shall have accrued . . . *Third.* Within two years: . . . an action for relief on the ground of fraud—the cause of action in such case shall not be deemed to have accrued until the discovery of the fraud."

A few general rules, here pertinent, may be briefly stated.

The recording of conveyances which are regular on their face, although given for the purpose of defrauding creditors, ordinarily constitutes constructive notice of their execution and contents, but not of the fraudulent purpose of the transfer. (*Underwood v. Fosha,* 96 Kan. 549, 551, 152 Pac. 638; *Kline v. Cowan,* 84 Kan. 772, 776, 115 Pac. 587; *Donaldson v. Jacobitz,* 67 Kan. 244, 246, 72 Pac. 846.) However, if the circumstances are such that the very making of the transfer and the terms of the instrument are of the essence of the cause of action for fraud, or are otherwise of such a character as to put a person of ordinary prudence upon inquiry as to the presence of fraud, the recording of the instrument also imparts notice of the fraudulent intent. (*Kittel v. Smith,* 136 Kan. 522, 524, 16 P. 2d 538; *Smith v. Rector,* 135 Kan. 326, 10 P. 2d 1077; *Donaldson v. Jacobitz,* supra; *Black v. Black,* 64 Kan. 689, 706, 68 Pac. 662.) On the other hand, where no obligation to examine the public records exists, or where a party participating in the fraud has led the defrauded party to forego an examination of the records, the recording of the instrument may not constitute constructive notice even as to its execution and contents, or the party guilty of the fraud may not assert such constructive notice. (*Hutto v. Knowlton,* 82 Kan. 445, 449, 108 Pac. 825.)

Another general rule to which this court has repeatedly given approval—at least as to *resident* debtors—is that a cause of action to set aside a conveyance alleged to have been made in fraud of creditors does not accrue until the debt has been reduced to judgment, execution issued thereon—unless the debtor is insolvent—and returned unsatisfied because of no property found. (*First National Bank v. Smith,* 143 Kan. 369, 372, 55 P. 2d 420; *National Bank v. Walters,* 129 Kan. 49, 50, 281 Pac. 868; *Hardware Co. v. Semke,* 105 Kan. 628, 185 Pac. 732; *Bank v. Chatten,* 59 Kan. 303, 52 Pac. 893.)

While this general rule has had wide acceptance, there is considerable conflict of authority concerning it, and particularly as to the requirement that execution must be issued and returned unsatisfied before the creditor is entitled to institute action to set aside a conveyance made in fraud of creditors. (See 1 Glenn, Fraudulent Conveyances and Preferences, rev. ed., chapters VI, VIII[A], and VII[B].) The reasoning upon which the rule is obviously based is that the mere alienation of property by a debtor does not necessarily indicate that he seeks thereby to defraud his creditors, or that his obligations will not be met when due; and that until the creditor has reduced his debt to judgment and shown that the judgment is not collectible except out of the property whose transfer he attacks, he is in no position to allege fraud and to ask that the conveyance be set aside. As ordinarily stated, the rule seems to declare that a judgment, execution thereon and return unsatisfied, are a condition precedent to a creditor's right to proceed in an action to set aside the conveyance. We cannot say that so rigid a construction of the rule has been followed in this state. In the case of *Benson v. Altenburg*, 124 Kan. 296, 259 Pac. 791, this court, although expressly recognizing the rule that a creditor must exhaust all process to secure a lien upon the debtor's property before filing an action in the nature of a creditor's bill to set aside a fraudulent conveyance, refused to set aside a judgment obtained by a creditor in such an action, although no execution had been issued on his prior judgment against the debtor. The judgment setting aside the conveyance was upheld for the reason that it had been shown in the trial of the case that issuance of execution on the judgment would have been fruitless, and would have served no useful purpose.

On the heels of the general rule just discussed, there inevitably follows another rule. It is that a creditor cannot indefinitely postpone accrual of his cause of action to set aside a conveyance fraudulently made, by undue delay in bringing action to reduce his debt to judgment, if he has had notice of the fraud or by reasonable diligence would have discovered it, or by dilatory prosecution of such action to finality after it has been commenced. (*First National Bank v. Smith,* supra; *National Bank v. Walters,* supra; *Young v. Buck,* 97 Kan. 39, 195, 154 Pac. 213, 1010; *Donaldson v. Jacobitz,* 67 Kan. 244, 72 Pac. 846.)

G. S. 1935, 60-306, *third*, does not require that an action be begun within two years after the fraudulent conveyance was made, or

within two years after notice, actual or constructive, of the fraud. Action must be begun within two years *"after the cause of action shall have accrued."* (Italics ours.) Although a conveyance may have been made and recorded, and the creditor is charged with notice of its fraudulent intent, he is in no position to proceed in an action to reduce the debt to judgment unless the debt is in default. In *Young v. Buck,* supra, p. 197, it was said:

"It is often said that a cause of action for relief on the ground of fraud accrues when the fraud is discovered, or when in the exercise of reasonable diligence it should have been discovered. Such a statement is substantially, but not absolutely, accurate. It is sufficiently exact to answer the purpose of the cases in which it has been employed. The statute, however, does not say that an action for relief on the ground of fraud is barred in two years from the time the fraud is discovered. It says that it is barred in two years from the time it shall have accrued. It does not say that all actions for relief on the ground of fraud shall be deemed to accrue upon the discovery of the fraud, but that no such action shall be deemed to accrue until the fraud is discovered. Its exact language is: 'the cause of action in such case shall not be deemed to have accrued until the discovery of the fraud.' Under these provisions the action accrues when the fraud is discovered, provided it is already complete in every other respect. But an action by a creditor to set aside a fraudulent conveyance of his debtor does not accrue in any event until his claim is reduced to a judgment. If when the judgment is obtained the fraud has been discovered, actually or constructively, his cause of action then accrues. If not, it accrues at such later time as the fraud is discovered. It cannot accrue until he has a right to bring his action, and until that time the statute of limitations cannot begin to run."

(See, also, *Hardware Co. v. Semke,* 105 Kan. 628, 631, 185 Pac. 732.)

Much confusion of thought in connection with some of the cases will be avoided if it be remembered that there are generally two actions involved—the first one being the action to reduce the debt to judgment, and the second one being the action to set aside the conveyance made in fraud of creditors. This distinction will, we think, resolve much, at least, of the conflict which counsel find between the cases. As heretofore noted, this court has said that the cause of action accrues in the second action when the debt has been reduced to judgment and execution thereon has been returned unsatisfied. The creditor cannot, however, unduly delay reducing the debt to judgment, and in *Donaldson v. Jacobitz,* supra, it was said in the syllabus that this delay "could in no event exceed two years without resulting in a complete bar to the action." We think it is clear, from an examination of the opinion in that case, that the two

years referred to would not necessarily begin when the fraud was discovered, but when—in addition to such discovery—there was also right of action upon the debt. The court held, in effect, that a delay of more than two years—the limit provided by statute for actions founded on fraud—after the fraud had been discovered and the debt was due before starting action to reduce the debt to judgment would be an unreasonable delay.

In *National Bank v. Walters,* 129 Kan. 49, 281 Pac. 868, upon which appellee places much reliance, the petition in the nature of a creditor's bill *to set aside the conveyance* was not filed, it is true, until more than two years after discovery of the fraud, and yet the plaintiff was permitted to recover. But in that case the *action to reduce the debt to judgment* was first brought within about fifteen months after the note matured and subsequent delays were expressly held not to involve laches on the part of the creditor. For the reasons clearly stated in *Young v. Buck,* 97 Kan. 39, 154 Pac. 213, the statute would not start to run until the cause of action accrued, and the cause of action would not accrue at least until judgment on the debt had been obtained. Having in mind the distinction between action on the debt and action to set aside the conveyance, we discern no conflict, in the light of the particular facts, between the Smith case, 143 Kan., *supra,* and the Walters case, 129 Kan., *supra,* which counsel for appellant seems to think exists. The two cases were well distinguished in the opinion in the former case.

In the light of the rules of law hereinbefore stated, let us examine the facts of the instant case. In 1925 the appellee loaned the De-Roos $5,000 and took their unsecured note for that amount. The note became due on February 28, 1926. When the due date arrived he could have demanded payment, or required renewal of the note, or continued to carry the debt without renewal and without security. He chose the latter course. While interest was paid regularly to February 28, 1936, there was no time during that ten-year period when payment of the principal could not have been demanded. On April 10, 1936, the deed was recorded. Under the facts as alleged, appellee must be charged with constructive notice, as of that date, of its execution and of its contents. The deed showed on its face that the grantee was the son of the grantors and that the considera-. tion was nominal. The note was then more than ten years past due. Appellee alleges that he had extended credit in particular reliance upon the ownership by the borrowers of this very land. He alleges

that in April, 1936, when the deed was given and recorded, the debtors "were practically, if not totally insolvent." Being charged with knowledge of the quitclaim deed and of its contents, he must be charged with knowledge that his debtors had attempted to convey away, without substantial consideration, the very property upon which he had relied as a creditor. Under such circumstances, what should appellee have done? Clearly, if he desired to attack the deed as being in fraud of his interests, he was obliged to proceed, without unreasonable delay, to qualify himself for bringing such an action by reducing the debt to judgment. He did not do so. He waited until February 8, 1939, about two years and ten months, before starting any sort of action to collect the debt. Under all the decisions above cited, this was too late.

It may be noted in passing that when he did start action it was not in Illinois, where both he, the grantors and the grantee lived. He sought a judgment *in rem* in Kansas in order to attach this particular property. It might be argued that such a proceeding does not comply with the essential reasons upon which the rule is based that before he is qualified to set aside a conveyance, the creditor must show a personal judgment with execution thereon returned unsatisfied. But whatever might be said for the argument, appellant would have to overcome the authority of *Parmenter v. Lomax*, 68 Kan. 61, 74 Pac. 634, wherein the facts were much like those of the instant case, and wherein the creditor had obtained only a judgment *in rem*, as against a nonresident debtor, but was permitted to maintain the action to set aside the conveyance. Moreover, there is much authority to support the view taken in the Lomax case that nonresidence or absence of the debtor obviates the necessity of a prior judgment at law—at least where such nonresidence or absence renders it impossible or impracticable to obtain such a judgment. (See 38 A. L. R. 269.) Moreover, it was alleged in the instant petition that the debtors had no property in Illinois out of which the demand could be satisfied. The case being here upon demurrer to the petition, the allegation must be taken as true. Accordingly, a judgment and issuance of execution thereon would have been fruitless, and under the authority of *Benson v. Altenburg*, 124 Kan. 296, 259 Pac. 791, the appellee would not be required to pursue a course which would be futile.

It follows from the conclusions hereinbefore stated that the action to set aside the deed was barred and that the demurrer should have been sustained. The judgment must be reversed. It is so ordered.