**PANHANDLE EASTERN PIPE LINE CO. v. PARISH et ux. (TOKLAN ROYALTY CORPORATION et al., Interveners).**

No. 2492.

District Court, D. Kansas, Second Division.

Jan. 6, 1947.

Mark H. Adams, of Wichita, Kan., H. W. Stubbs, of Ulysses, Kan., C. R. Kirkbride, of Kansas City, Mo., Ira L. Letts, of Providence, R. I., and Arthur G. Logan, of Wilmington, Del., for plaintiff.

W. P. Lilleston, of Wichita, Kan., D. G. Warrick and Charles F. Lamkin, Jr., both of Kansas City, Mo., W. P. Wesley, of

Ulysses, Kan., and O. S. Brewer, of Kansas City, Mo., for defendants.

A. D. Weiskirch, of Wichita, Kan., and G. C. Spillers, of Tulsa, Okl., for intervenors.

MELLOTT, District Judge.

This case is before the court upon motions filed by the defendants, Frank P. Parish and Theodore F. Parish, who state therein that they "appear specially and solely for the purpose of pleading to the jurisdiction" of the court. They move to quash the returns, to vacate the order for summons by publication, to set aside the order of attachment and the order appointing a receiver, and to dissolve the attachment and dismiss the petition.

The case was removed to this court from the District Court of Grant County, Kansas. The petition filed in the state court seeks judgment against each of the defendants for the sum of two hundred eight thousand seven hundred fifteen dollars and eighty-five cents ($208,715.85), with interest at the rate of six per cent per annum from June 16, 1930, and for the further sum of seventy three thousand one hundred eighty dollars and fifty cents ($73,180.50), with interest at six per cent per annum from September 1, 1930, for costs of suit, and for such other and further relief as to the court may seem equitable and just.

Summarizing the petition generally, it is alleged that the defendant, Frank P. Parish, was plaintiff's president, a member of its board of directors and held more than a majority of its outstanding stock at the time of the happening of the incidents therein related. That Parish advised the members of the board various sales contracts had been secured and that it was necessary for plaintiff to compensate certain individuals by giving them shares of Missouri-Kansas Pipe Line Company Stock; that the stock was then owned by Frank P. Parish & Co., of which company Frank P. Parish was then president and majority stockholder; that the board of directors of plaintiff adopted a resolution authorizing the purchase of fifteen thousand (15,000) shares of said stock at twenty-eight dollars ($28) per share, or a total cost of four hundred twenty thousand dollars ($420,000); that the stock was purchased and transferred to Parish who delivered five thousand eight hundred (5,800) shares thereof to a New York brokerage firm to sell for his personal account; that this was done; and that the proceeds, viz., two hundred eight thousand seven hundred fifteen dollars and eighty-five cents ($208,-715.85) were deposited by Parish in his personal accounts and converted to his own use.

It is further alleged that an additional four thousand (4,000) shares of said stock were purchased by Parish, acting on behalf of plaintiff, without authorization, and that three thousand five hundred (3,500) of these shares were sold by Parish through the same brokers for the account of Mo-Kan Finance Corporation, a corporation which had been organized by Parish and all of the stock of which had been issued in the name of Parish's wife, Theodore F. Parish. It is claimed that the proceeds, viz., seventy three thousand one hundred eighty dollars and fifty cents ($73,180.50) derived from the sale of the three thousand five hundred (3,500) shares were delivered to the Mo-Kan Finance Corporation, whose charter, following a change in name, was later proclaimed void for non-payment of taxes and that Parish and his wife, either prior to or following the dissolution of that corporation, appropriated all of its assets to their own use.

The petition alleges that Frank P. Parish actually managed and controlled the Mo-Kan Finance Corporation; that his wife was the owner of its stock in name only and was, in the conduct of its business, subject to his order and direction; that she either had actual knowledge of, or was charged with the notice of, the source of all funds received by that corporation and the nature of the transactions in which it engaged; that by reason of the acts of Parish and the knowledge and participation of his wife and the unjust enrichment of both of them, they now hold said funds in trust for the plaintiff; and that they and each of them are indebted to it in said amounts. Allegations explaining the delay in instituting the action are made for the purpose of demonstrating that it was

brought within the period of the applicable statute of limitations.

Neither of the defendants being residents of Kansas, oil and gas leases acquired in Kansas by Parish in 1937 and purportedly assigned by him in 1939 to his wife, without consideration and in fraud of his creditors, including plaintiff, were attached. The defendants were served with summons in Maryland and by publication in Kansas and a receiver of the attached properties was appointed by the state court. Following removal to this court the receiver was continued in office, filed the required bond and is collecting the proceeds from certain oil and gas runs.

The intervenors have answered in order to protect certain assignments alleged to have been made by the defendants to them of oil and gas leases. Plaintiff assails the validity and effect of some of the assignments and by counterclaim seeks affirmative relief against the intervenors. Evidence has been received upon some of the issues raised by the intervenors or arising out of the claims of plaintiff against them; but none of the issues are germain to the question now under consideration by the court, and will not be discussed.

Grounds common to both motions are that the defendants have not been personally served in Kansas, that no cause is stated under which service by publication or by process without the state of Kansas may be had, that the defendants are not and have not been residents of Kansas, and that the court has not acquired any jurisdiction over either defendant. The motion filed by Frank Parish further alleges that the action is one for a personal judgment against him and that he has no property in Kansas on which attachment could be levied. Theodore F. Parish claims that the petition does not state a cause of action against her and that it seeks to divest her of title in a collateral proceeding, purportedly asserting a claim against her for a personal judgment. Both defendants allege that the attachments infringe their rights under Sec. 1 of the Fourteenth Amendment to the Constitution.

In their arguments and briefs the defendants have contended that the action is one in the nature of a creditors' bill to set aside an allegedly fraudulent assignment of the oil and gas interests to Mrs. Parish, and that it cannot be maintained in this district under the Kansas decisions in absence of a prior judgment against Frank Parish. It should be noted at this point that the petition was, apparently, carefully drawn to avoid this pitfall. Nowhere does it ask that the assignment be set aside; rather, it alleges that, by reason of the fraud, the assignment was and is void, that nothing passed thereby, and that all right, title and interest of Frank Parish in and to the oil and gas leases remained vested in him.

Plaintiff claims that Rule 18(b) of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, is applicable and eliminates the necessity of a prior judgment in an action to set aside a fraudulent conveyance where the case has been removed to a federal court. Its reasoning seems to be based upon the theory that the question is essentially one concerning equitable remedies which may be granted by the United States District Court, and that this court cannot, under the doctrine of Erie Railroad Co. v. Tompkins, 1938, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487, be limited by state law. The real question, as this court views it is, however, whether the attachment was properly made on property belonging to either or both of the defendants. It is essentially jurisdictional. If the attachment was proper, this court, on removal, has jurisdiction and can render final judgment; if not, this court has nothing upon which it can finally act, defendants not being personally subject to process either out of this court or the state court. Cf. Guaranty Trust Co. of New York v. York, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079, 160 A.L.R. 1231.

The attachment was levied by authority of the state court under the provisions of state law. By that law it must be tested. Title 28 U.S.C.A. § 79. The question with which this court is now concerned does not involve the merits of the case or the granting of equitable relief on final hearing. Only the jurisdiction obtained by process issued out of the state court prior to removal is at issue. It is dif-

ficult to see how Rule 18(b) can control jurisdiction obtained by the state court on process issued therefrom and before removal was even contemplated. The jurisdiction acquired by this court on removal of a cause from the state court is, in a limited sense, a derivative jurisdiction. If the state court lacked jurisdiction before removal, this court can acquire none; conversely, if the state court had jurisdiction and removal requirements were satisfied, the elements of federal jurisdiction otherwise existing, jurisdiction attached on removal. Title 28 U.S.C.A. § 81; Kunz v. Lowden, 10 Cir., 124 F.2d 911; Freeman v. Bee Mach. Co., 319 U.S. 448, 63 S.Ct. 1146, 87 L.Ed. 1509; United States v. Anglin & Stevenson, 10 Cir., 145 F.2d 622, certiorari denied 324 U.S. 844, 65 S.Ct. 678, 89 L.Ed. 1405; Venner v. Michigan Cent. R. Co., 271 U.S. 127, 46 S.Ct. 444, 70 L.Ed. 868; Lambert Run Coal Co. v. Baltimore & O. R. Co., 258 U.S. 377, 42 S.Ct. 349, 66 L.Ed. 671; Compton v. Carter Oil Co., 10 Cir., 283 F. 22; Fidelity Trust Co. v. Gill Car Co., C.C., 25 F. 737; Danielson v. Donmopray, D.C., 57 F.2d 565; Oldmixon v. Pennsylvania R. Co., D.C., 1 F.Supp. 101. For cases in which the jurisdiction of the federal court was dependent upon the jurisdiction of the state court obtained by attachment process, cf. Lazenby v. Codman, 2 Cir., 116 F.2d 607, reversing D.C., 30 F.Supp. 441; Kehaya v. Axton, D.C., 30 F.Supp. 838. The latter cases were decided subsequent to the adoption of the Federal Rules of Civil Procedure.

There is some doubt as to whether, under the Kansas decisions, a prior judgment against the debtor is a prerequisite to the maintenance of an action to set aside a fraudulent conveyance where the debtor is a non-resident. The case of Parmonter v. Lomax et al., 68 Kan. 61, 74 P. 634, is cited by counsel for both sides as authority for their conflicting views. The most that can be gleaned from that case, which is apposite here, is that it follows the general rule laid down in Tennent v. Battey, 18 Kan. 324, that a general creditor, before his demand has been reduced to judgment, cannot maintain an equitable suit to set aside a fraudulent conveyance by his debtor; but a prior judgment in rem, based on attachment of the equitable interest in land remaining in the fraudulent transferor thereof and not upon personal service is sufficient to satisfy the requirement.

While the opinion by the Supreme Court of Kansas in the case of Causemaker v. DeRoo, 153 Kan. 648, 113 P.2d 85, seems to interpret Parmenter v. Lomax as supporting the view that non-residence or absence of the debtor obviates the necessity of a prior judgment, this court, on careful examination of the earlier case, has found no language in that opinion justifying such an interpretation, and the Causemaker opinion went no further. Apparently the Kansas court has not finally determined the matter; but, in the opinion of this court, such decision is not necessary for determination of the pending motions. It seems clear, however, that an attachment or garnishment proceeding in Kansas does not constitute a specific lien against the debtor's property upon which a creditors' bill to set aside an allegedly fraudulent conveyance may be maintained. Tennent v. Battey, supra; Farmers & Merchants State Bank v. Lemley, 105 Kan. 15, 180 P. 238, 181 P. 606; Cartier v. Central Trust Company, 155 Kan. 191, 124 P.2d 435; Cole v. Thacker, 158 Kan. 242, 146 P.2d 665.

Since the plaintiff has not heretofore obtained a judgment against Frank Parish, it is imperative that this court determine the nature of the action filed herein. Much confusion can be avoided by a simple and direct analysis of the petition. As has been indicated above, it contains no prayer that the assignment of the oil and gas leases to Mrs. Parish be cancelled or set aside. It alleges the conversion of funds of the plaintiff by Frank Parish, his funneling of a portion thereof into his wife's corporation, her knowledge and participation and the resultant indebtedness of the defendants to the plaintiff corporation. The prayer is for a judgment against the defendants, for attachment of property found in Kansas belonging to the defendants or either of them, including the property described in the purported assignment, for the appointment of a receiver of the attached properties, for the sale of the attached properties and that the proceeds

of the sale be returned into court pending further order of the court.

■ Clearly a cause of action has been stated against Frank Parish. It must be assumed for present purposes that the attachment was levied on property in which he had an interest. The Order of Attachment directed the sheriff to attach all "property of every description of the above named defendants." The return shows that the property was attached "by virtue of said order of attachment" at places "where the properties of said defendants described in the annexed inventory and appraisement were found. * * *" The petition sufficiently alleges that Parish retained some interest in the oil and gas leases. What that interest may be, or what its value now is or ultimately may be, is not determinative of the validity of the attachment. If the assignment was in truth fraudulent, Parish has an equitable interest in the property. Whether it is such an interest as he himself could command is not controlling; an equity remains in him for the benefit of defrauded creditors. What that interest or equity might ultimately bring on judicial sale and what subsequent actions the purchaser thereof might find it necessary to take in order to obtain unimpeachable title are likewise matters unimportant to the determination of the issue immediately to be decided.

■ That an equitable interest in land may be attached under the Kansas law is incontrovertible. Parmenter v. Lomax, supra; Shanks v. Simon, 57 Kan. 385, 46 P. 774; Travis v. Topeka Supply Co., 42 Kan. 625, 22 P. 991. Based upon the attachment of his equitable interest and without personal service, the judgment against Parish, should one finally be entered, would be quasi-in-rem and could extend only to his interest in the attached property. However, upon the authority of Parmenter v. Lomax, supra, Knox v. Farguson, 97 Kan. 487, 155 P. 929, and decisions of the Kansas Supreme Court of similar import, this court is constrained to hold that the petition states a cause of action against Frank P. Parish and that the attachment of whatever equitable interest he may have in the properties is sufficient to give the court jurisdiction to render a quasi-in-rem judgment if the evidence should warrant it in doing so.

This is the same procedure that was followed in the litigation which preceded Parmenter v. Lomax, supra, and which was impressed therein with the stamp of approval by the Supreme Court of Kansas. Parmenter was the assignee of two judgments rendered against Lomax in Nebraska. He brought suit in Kansas on the Nebraska judgments and, with service obtained only by publication, attached land theretofore conveyed, allegedly in fraud of creditors, to others. Default judgment was entered on the primary obligation. In the case cited, subsequently filed, Parmenter brought an action in the nature of a creditors' bill to have the conveyance set aside and the land subjected to his judgment. Regarding the validity of the judgment based upon the attachment of the debtor's interest in the conveyed land, the court said:

"He might have sold the attached property under the order of the court after judgment, but in such case, the legal title being in a person other than the defendant, another action of some kind by the purchaser would have been necessary to determine the validity of the conveyance from the judgment debtor to the person claiming to own the land. The judgment obtained on service by publication was valid in all respects so far as the property seized was concerned."

Lomax prevailed in the action to set aside the conveyance because Parmenter failed in his proof of fraud and lack of consideration.

Similarly, the litigation which preceded Causemaker v. DeRoo, supra, likewise relied upon by both the plaintiff and the defendants in this case, was based upon the attachment of an equitable interest in land allegedly conveyed in fraud of creditors. Causemaker brought an action upon a note and attached the interest of Mina L. DeRoo and her husband, Arthur H. DeRoo, in land theretofore conveyed. According to the opinion [153 Kan. 648, 113 P.2d 86], "a judgment in rem for $5,825 and interest was obtained against the DeRoos and the land ordered sold. Sale was not effected for reasons presently to be stated. * * *

the DeRoos (had) executed a quitclaim deed to the Pawnee county land to their son Arthur Francis DeRoo. * * * appellee filed the instant action in Pawnee County to set aside the quitclaim deed on the ground that it was given in fraud of his interests as a creditor of the grantors." Although the court held the action to set aside the conveyance barred by laches, nowhere did it question the validity of the judgment based upon the attachment of the equitable interest remaining in the fraudulent transferors.

In Knox v. Farguson, supra, the plaintiff combined an action on a note due from Farguson with an action to subject certain land previously placed in the name of Farguson's wife to payment of the note. The real property was not attached. The court rightfully held that no judgment could be rendered against Farguson and that the portion of the action which was in the nature of a creditors' bill could not be maintained until judgment had been rendered on the indebtedness. The last paragraph of the opinion preceding the order is not without significance here [97 Kan. 487, 155 P. 930]:

"It appears from the record, which we have before us, that defendant J. G. Farguson was a nonresident of this state. If the conveyance to E. M. Farguson was fraudulent, a writ of attachment could have been levied on that property, and it could have been held in the custody of the law to await any judgment that might be rendered in the action, and then sold to satisfy that judgment. The attachment would have been subject to the right of defendant E. M. Farguson to protect her interest in the property in any proper proceeding."

The plaintiff in Shanks v. Simon, supra, obtained his judgment in the debtor action on the basis of an attachment of an equitable interest in fraudulently conveyed land to which he had never held legal title but which had been conveyed directly from his vendor to the third party by virtue of the insertion by the debtor of that party's name in a blank deed. The attachment was held valid to support the judgment, even though it had been levied before the deed was delivered and before the legal title had passed

from the debtor's vendor. While a bona fide purchaser from the holder of the legal title was protected, the procedure of attaching the equitable interest of the fraudulent transferor was approved in Travis v. Topeka Supply Co., supra [42 Kan. 625, 22 P. 992], with the terse comment "There is no doubt under our statutes, but that whatever equitable interest the Topeka Supply Company had in these lots was subject to attachment."

In Tennent v. Battey, supra, attachment was levied upon property allegedly fraudulently conveyed; but the second action to set aside the conveyance was instituted before the first went to judgment. In holding that the second action was premature, the court said:

"* * * in order to preserve their lien [of attachment] as a security for the satisfaction of any judgment they may recover, they have the right to defend that lien against third parties claiming the goods, and in that defense they have the right to show any fact that will defeat the claimant's title. If this were not so they might, though their claim against the debtor be never so meritorious, be compelled to relinquish their security to one claiming under a title fraudulent as to them. * * * The only right the plaintiffs have under the attachment is, to use such measures as may be necessary to preserve this security until they can reduce their claim to judgment. * * * When that right has been definitely settled, their lien having been preserved intact, they can then commence actions to remove obstructions in the way of their execution."

While the Supreme Court of Kansas, in the later case of Cole v. Thacker, supra, affirmed the trial court's order sustaining a demurrer on the grounds of misjoinder of causes where judgment both on a note and to set aside a fraudulent assignment was sought, it cast no shadow upon the recognized right of the creditor to attach his debtor's equitable interest in fraudulently conveyed property.

Since the cases just referred to involve the propriety of bringing a creditors' bill before the creditors' claims have been reduced to judgment in a prior action, and in

order to keep the distinction between those cases and the one now before the court in clear focus, it should be reiterated that the plaintiff herein, regardless of indiscreet pronouncements in its briefs, has not asked that Parish's assignment to his wife be cancelled or set aside. This case, therefore, is not a creditors' bill. It is a suit for money. The efficacy of this proceeding does not rest upon an ability to follow trust property. If an money judgment ultimately be secured against Parish, it may be levied—in the present state of the record—only against the property belonging to him. If he has no equitable interest in the property then nothing has been attached.

Plaintiff, in its briefs, claims to have stated three causes of action against Theodore F. Parish: (1) A claim for money based upon her unjust enrichment, her receipt of a portion of the funds converted by her husband with the knowledge that it had been converted and her participation in the conversion; (2) a claim to have the assignment of the oil and gas leases set aside as fraudulent; and (3) an action in equity under the trust fund doctrine. Since the petition sets out no allegations attempting to trace the converted funds and contains no prayer for cancellation of the assignment, the court has serious doubt as to whether any causes of action have been stated under the last two theories; but that question need not be, and is not, decided at this juncture.

A careful analysis of the petition shows that a demand for a money judgment against Mrs. Parish has been made and facts relating to the conversion and her receipt of the money knowing it to have been converted have been alleged in support of it. The defendants do not deny that she has an interest in the attached property. The legal title is in her name. Here, also, although no personal service was had, the attachment would give the court jurisdiction to render a quasi-in-rem judgment, if the evidence justifies, which could be executed upon her interest, whatever it ultimately may prove to be, in the attached property.

■ From what has been said it is obvious this court is of the opinion the motions to quash and to dissolve the attachments should be denied. In reaching this conclusion the argument of the defendants upon brief to the effect that the petition shows on its face that the plaintiff's cause of action is barred by limitations and laches has not been overlooked. It is elementary, however, that the sufficiency of a pleading may not be tested under a special appearance. King v. Ingels, 121 Kan. 790, 250 P. 306; and cases therein cited. In all of the cases cited by defendants—Zane v. Zane, 5 Kan. 134, Norton v. Board of County Com'rs of Montgomery County, 109 Kan. 559, 199 P. 388; Herthel v. Barth, 148 Kan. 308, 81 P.2d 19, 119 A.L.R. 326; and First National Bank of Wetmore v. Smith, 143 Kan. 369, 55 P.2d 420—the defendants had entered general appearances, in three of them demurrers being interposed and, in the fourth, an objection to the introduction of any evidence. The defendants in the instant case have studiously endeavored to avoid entering a general appearance. Whether their absence from the state tolled the statute of limitations, whether plaintiff has been guilty of laches, and whether it can adduce sufficient proof to entitle it to the relief sought are all questions which may appropriately be deferred until a later date.

■ The clerk will note upon his docket. as required by Rule 79 of the Rules of Civil Procedure and Rule XXI of Rules of Practice of this court, that the motions are denied. Application of the defendants for leave to plead, if desired, should be made within ten (10) days from the date the notation is made by the clerk in his docket.